THE STATE OF OHIO, APPELLEE, *v.*
GEIS, APPELLEE; TAFT BROADCASTING
COMPANY, WTVN-TV, APPELLANT.

(No. 80AP-723—Decided June 16, 1981.)

*Mr. Michael Miller,* prosecuting attorney, and *Mr. David Bosley,* for appellee state of Ohio.

*Messrs. Taft, Stettinius & Hollister, Mr. John J. McCoy* and *Mr. Michael J. Zavatsky,* for appellant Taft Broadcasting Co.

*Blakemore, Rosen & Norris Co., L.P.A.,* and *Mr. David A. Lieberth,* for *amicus curiae.*

STRAUSBAUGH, P.J. This is an appeal by Taft Broadcasting Company from a decision of the Court of Common Pleas of Franklin County finding WTVN-TV, a division of Taft Broadcasting Company, to be in contempt of court for failure to comply with two subpoenas duces tecum duly served upon WTVN-TV in connection with this case.

The defendant in this case, Mark Geis, was indicted for the offense of aggravated trafficking in drugs in violation of R.C. 2925.03. Prior to trial, defendant served upon Miles Resnick, c/o WTVN-TV, and Bill Wolfson, c/o WTVN-TV, subpoenas duces tecum requiring attendance at a pretrial hearing scheduled for June 30, 1980 and the production of "any and all notes, documents, and/or electronically recorded tapes, audio or video, with one John Carte, aka J. C." Prior to said hearing, Taft Broadcasting Company (hereinafter referred to as WTVN-TV) filed a motion to quash the subpoenas duces tecum, which motion was overruled by the trial court in an entry filed with the clerk of the trial court on August 5, 1980. In overruling the motion to quash the subpoenas the trial court found that the evidentiary materials which were to be produced were relevant and material to the defense of entrapment in the instant case. The trial court set August 8, 1980, at 9:00 a.m., as the time by which WTVN-TV was to produce all the materials requested within the subpoenas duces tecum before the court for an *in camera* inspection. Said inspection was to be made in the presence of the court and counsel for both parties.

The trial court overruled a subsequent motion to reconsider submitted by WTVN-TV, and, upon the failure of said witnesses to comply with the order of the court by producing the material described within the subpoenas duces tecum, WTVN-TV was found to be in civil contempt and fined $100 per day until the material was turned over to the trial court. The fines and the trial were stayed pending resolution of this appeal.

In appealing the finding of contempt by the trial court, WTVN-TV raises the following assignments of error:

"1. The court below erred in holding WTVN-TV in civil contempt of court.

"2. The court below erred in denying WTVN-TV's motion to quash Defendant Geis's Criminal Rule 17 subpoenas duces tecum and in denying WTVN-TV's motion for reconsideration of its Order.

"3. The court below erred in ordering WTVN-TV to surrender [at the] pretrial to defense counsel unpublished video outtakes.

"4. The court below erred in ordering pretrial production and surrender by WTVN-TV of confidential news information to defense counsel."

In the case of *Smith* v. *Bd. of Trustees* (1979), 60 Ohio St. 2d 13 [14 O.O.3d 162], the Supreme Court, in the first paragraph of the syllabus, held:

"Where a non-appealable interlocutory order results in a judgment of contempt, including fine or imprisonment, such a judgment is a final and appealable order and presents to the appellate court for review the propriety of the interlocutory order which is the underlying basis for the contempt adjudication."

The assignments of error, reproduced above, all raise the same issue: the propriety of the trial court's decision to overrule WTVN-TV's motion to quash. The overruling of that motion served as the basis for the finding in contempt. They will therefore be treated together.

An examination of the record reveals that WTVN-TV conducted interviews and subsequently broadcasted a news story on the subject of drug informants. Part of the news story which was broadcast included an interview with a person, who was identified as "J.C.," and whose face and voice were not concealed or disguised. It is defendant's contention that "J.C." was in fact John Carte, an informant working with police officials who allegedly set up the drug sale for which the defendant is being prosecuted. During the course of a pretrial hearing, counsel for WTVN-TV represented to the trial court that the materials which comply with the subpoenas are comprised of four to five hours of video tapes "which may relate to one J.C. or John Carte. * * *" This appeal involves only those portions of the video tapes that were not broad-

cast, as WTVN-TV has agreed to comply with the subpoenas duces tecum as to those portions of the video tapes that were actually broadcast.

When, as in this case, a trial court has before it a motion to quash a subpoena duces tecum on the grounds that said material is protected by R.C. 2739.04, the trial court must proceed with a three-part analysis.

In a criminal proceeding, a subpoena duces tecum is issued pursuant to Crim. R. 17(C), which is set forth below:

"A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein; but the court, upon motion made promptly and in any event made at or before the time specified in the subpoena for compliance therewith, may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that the books, papers, documents or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time they are offered in evidence, and may, upon their production, permit them or portions thereof to be inspected by the parties or their attorneys."

While there is little case law in Ohio interpreting the above provision, it is clear by the language used within Crim. R. 17(C) that a subpoena may be used only to command the production of documentary evidence. Faced with a motion to quash a subpoena duces tecum, the trial court, prior to any consideration of the existence of a privilege, must determine whether the production of the documentary evidence would be "unreasonable or oppressive." Citing *United States* v. *Iozia* (S.D. N.Y. 1952), 13 F.R.D. 335, the United States Supreme Court stated that in order to require production prior to trial pursuant to Fed. R. Crim. P. 17(c), the party in favor of issuing the subpoena must demonstrate the following:

"* * * (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " (Footnote omitted.) *United States* v. *Nixon* (1974), 418 U.S. 683, at 699-700.

It should be noted that, for the most part, Fed. R. Crim. P. 17(c) was adopted in Ohio as Crim. R. 17(C) except for minor changes in the language which have no effect on the substance of the provision.

While Crim. R. 17(C) gives the trial court the discretion to examine the requested evidence prior to its production, where, as in the case before us, the motion to quash a subpoena duces tecum is supported by a claim that the requested evidence is protected by R.C. 2739.04, the trial court *must* make an *in camera* inspection of the evidence requested to be produced in order to determine the admissibility and relevancy of said evidence. Such an inspection should take place outside the presence of the parties and counsel in order to assure the confidentiality of evidence that may in fact be later found to be protected by R.C. 2739.04.

Such an *in camera* inspection of the evidence serves two purposes. First, it allows the trial court to make an informed decision as to the evidentiary nature of the material in question rather than depending on the representations of counsel. Secondly, the *in camera* inspection allows the trial court to discern that aspect of the evidence, which has evidentiary value from that which does not, as well as to allow the trial court to restrict the availability of that evidence, which has limited evidentiary value. For example, the need for evidence that is admissible solely for the purpose of impeaching a witness is insufficient to require its production prior to the trial. Absent some

showing of prejudice, there is no harm in allowing said evidence to be produced after a witness has testified.

Based on the above, we find that the trial court erred by denying WTVN-TV's motion to quash without making an *in camera* inspection of the video tapes, outside of the presence of the parties and counsel, to determine the evidentiary nature of the video tapes.

Once the trial court has determined that the evidence requested meets the requirements of Crim. R. 17(C), and therefore the evidence can be required to be produced prior to trial, the trial court must determine whether said evidence is protected from disclosure by R.C. 2739.04, which is set forth, in part, below:

"No person engaged in the work of, or connected with, or employed by any noncommercial educational or commercial radio broadcasting station, or any noncommercial educational or commercial television broadcasting station, or network of such stations, for the purpose of · gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news shall be required to disclose the source of any information procured or obtained by such person in the course of his employment, in any legal proceeding, trial, or investigation before any court, grand jury, petit jury, or any officer thereof, before the presiding officer of any tribunal, or his agent, or before any commission, department, division, or bureau of this state, or before any county or municipal body, officer, or committee thereof."

It is the contention of WTVN-TV that the video tapes in question are protected by the above quoted statute, said video tapes being within the definition of "source of * * * information." In support of said argument WTVN-TV relies on the decision in the case of the *Taylor & Selby Appeals* (1963), 412 Pa. 32, 193 A.2d 181, in which the Pennsylvania Supreme Court interpreted the phrase "source of any information" to mean anything from which

information may be derived, including a newsperson's notes, tapes and records, as well as the identity of an informant. The state submits that said phrase only protects the identity of the informant providing the information.

While this is a case of first impression, a determination of this issue requires an interpretation of the language contained in R.C. 2739.04. The controlling principle of statutory construction and interpretation is legislative intention. Clearly, the legislative intent behind R.C. 2739.04 is to protect the relationship between an informant, who desires to give information to a radio or television news reporter but who fears publicity or the possible retribution arising from the discovery that he is the source of information that has been broadcasted, and a radio or television news reporter. Such a relationship is to be fostered in order to protect the free flow of information from the informant to the reporter. We find that the legislature intended such a purpose to be achieved by protecting only the *identity* of the informant.

Such a conclusion is supported by comparison of the language used in R.C. 2739.04 with the language used in other statutes where the legislature has bestowed a privilege from disclosure during legal proceedings. An examination of the provisions which grant the testimonial privileges, *e.g.,* attorney-client (R.C. 2317.02[A]); physician-patient (R.C. 2317.02[B]); psychologist-patient (R.C. 4732.19); husband-wife (R.C. 2317.02[D]); and cleric-penitent (R.C. 2317.02[C]), indicates a clear legislative intent to protect that which was communicated between those persons. Such is reflected in the language used in said statutes. However, in R.C. 2739.04 there is no indication that the information communicated to the broadcast journalist from the informant is protected. By use of the phrase "source of * * * information," we hold that the legislature intended to give broadcast journalists a testimonial privilege from

disclosing only the identity of the informant.

In an alternative argument, WTVN-TV contends that even if R.C. 2739.04 only allows for the protection of the identity of the informant, compliance with the subpoenas duces tecum in this case would identify the informant of the information contained on the video tapes which have not been broadcast. WTVN-TV submits that because of their unique characteristics, the video tapes in question cannot be viewed by any individual without revealing the identity of the source of the information they contain. We do not find the above argument to be persuasive. When compliance with a subpoena duces tecum requires turning over information contained on video tapes, said tapes can be transcribed with any statement identifying the informant being excised. This problem could also be avoided by taking precautions to protect the informant so that his appearance and voice could be disguised in such a manner so that viewing the video tapes would not reveal the informant's identity.

WTVN-TV also asserts that it cannot comply with the subpoenas duces tecum in this case without identifying the source of the information on the video tapes in question. It should be noted that the language of the subpoenas requests the production of "any and all notes, documents, and/or electronically recorded tapes, audio or video, with one John Carte, aka J. C." When this issue was put before the trial court, it found that the privilege conferred by R.C. 2739.04 as to the source of the information in the video tapes yet to be broadcast had been waived by the broadcasting of portions of the video tapes in such a manner so that the informant could be recognized by the viewing public. While we agree that the broadcasting of portions of an interview in such a fashion that makes the informant recognizable by the viewing public does constitute a waiver by the journalist of the privilege conferred by R.C. 2739.04, the extent of that waiver requires careful consideration.

Once again we are faced with an issue which has never been dealt with in a reported decision in this state. However, several cases from other jurisdictions are collected in Annotation, 99 A.L.R. 3d 37, Section 21, which discusses the extent of a waiver of a privilege conferred by a statute where there is a public disclosure of the source of information. A thorough reading of the cases contained in the article reveals that the courts have found that, where the informant's identity has been revealed, the privilege conferred upon a newsperson by various shield laws is waived only to the extent of the information publicly disclosed. In the case of the *Taylor & Selby Appeals, supra* (412 Pa. 32, 193 A.2d 181), the Pennsylvania Supreme Court found as follows:

"* * * We therefore hold that a waiver by a newsman applies only to the statements made by the informer which are actually published or publicly disclosed and not to other statements made by the informer to the newspaper." (Footnote omitted.) *Id.,* 412 Pa., at 44; 193 A. 2d, at 186.

Such a finding was repeated in the case of *Wolf* v. *People* (Sup. Ct. 1972), 69 Misc. 2d 256, 329 N.Y. Supp. 2d 291, affirmed (App. Div. 1972), 39 A.D. 2d 864, 333 N.Y. Supp. 2d 299, a case in which the court ordered the production of a signed original manuscript which was published and attributed to the author of the manuscript, an inmate of a correctional facility who participated in and wrote about a riot by the inmates. While neither of the above serve as precedent, said holdings reflect the nature of the privilege defined by R.C. 2739.04.

The clear language of R.C. 2739.04 mandates that the identity of an informant be protected from disclosure in any legal proceeding. Where, as in this case, compliance with subpoenas duces tecum requires the production of information never before published or disclosed to the

public, such information can only be turned over if it can be done so without necessarily identifying the source of the information. Where the subpoena is phrased in such language requiring the production of all notes, tapes, etc. from the interview with a named source, anything produced in compliance with the subpoena duces tecum is identified to the named source by virtue of the newsperson's compliance. In such a situation there is no way to protect the identity of the source.

On the other hand, when the subpoena duces tecum requests production of all notes, tapes, etc. arising from the newsperson's investigation of a subject matter (*i.e.,* drug informants), then the notes and tapes can be produced with anything identifying the source of the information excised . from that material turned over in compliance with the subpoena duces tecum. Thereafter, any connection between the information and its source would then *not* be a result of the information turned over by the newsperson but rather by other evidence presented by the defendant. We therefore find that the language of the subpoenas duces tecum in this case prevents WTVN-TV from complying with said subpoenas without identifying the source of that information. The trial court erred in finding that any privilege conferred by R.C. 2739.04 was waived as to all the information which the reporter received from "J.C." during the course of the interview. To hold otherwise would be to unduly limit the privilege conferred by R.C. 2739.04.

R.C. 2739.04 arms radio and television news reporters with an absolute privilege to protect the identity of their informants in any judicial proceeding. However, before a trial court rules that certain evidence is protected by R.C. 2739.04 the trial court must take into account the Sixth Amendment rights of a criminal defendant. In the landmark case of *Branzburg* v. *Hayes* (1972), 408 U.S. 665, the United States Supreme Court refused to recognize that a testimonial privilege is provided to a newsperson by the First Amendment. In so doing, the court recognized that various states have granted a statutory privilege to newspersons of "varying breadth"; but, as indicated in the following statement, the court recognized the public's interest in disclosure:

"* * * On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial." *Branzburg* v. *Hayes,* at 690-691.

Taking into consideration the privilege bestowed by R.C. 2739.04 with the Sixth Amendment rights of a criminal defendant, we are reminded of the following statement from the case of *Estes* v. *Texas* (1965), 381 U.S. 532, at page 539:

"The free press has been a mighty catalyst in awakening public interest in governmental affairs, exposing corruption among public officers and employees and generally informing the citizenry of public events and occurrences, including court proceedings. While maximum freedom must be allowed the press in carrying on this important function in a democratic society its exercise must necessarily be subject to the maintenance of absolute fairness in the judicial process. * * *"

In balancing the interest of a democratic society in protecting the free flow of information from informant to a newsperson, as provided by R.C. 2739.04, and the right of a defendant to a fair trial, the trial court will be faced with a monumental task. The application of such a balancing of the interests must depend on the particular circumstances of each case, the crime charged, the possible defenses, the

significance of the informant's testimony as well as other factors. Once again the importance of such a decision by the trial court requires that the trial court make an *in camera* inspection of the evidence in question, outside the presence of the parties and their counsel, so that an informed decision may be made.

Upon review of the record and based on the above, we find that the trial court erred in failing to conduct an *in camera* inspection to determine whether the evidence which was requested by defendant's subpoenas duces tecum was admissible and relevant and subject to Crim. R. 17(C). The trial court also erred by finding that the broadcasting of fifteen minutes of the video tapes in such a manner so that the informant could be identified by the viewing public by WTVN-TV constituted a waiver of any protection provided by R.C. 2739.04 as to the remaining video tapes. As the subpoenas duces tecum are now phrased, in this case, WTVN-TV is protected from turning over the requested video tapes by R.C. 2739.04. If the subpoenas duces tecum can be amended, on remand, to request all evidence in the possession of WTVN as a result of an investigation into the area of drug informants, WTVN-TV may be ordered to produce the information it has obtained in such a manner so as to protect the identity of the source of said evidence. If the trial court should find that the production of the requested video tapes by WTVN-TV is prohibited by R.C. 2739.04, then the trial court must balance the competing interest of the journalist and the defendant.

We find that the first, third and fourth assignments of error are well taken and sustained. The second assignment of error is overruled as being premature pending the trial court's *in camera* inspection of the requested evidence. The judgment of the trial court finding WTVN-TV in civil contempt is hereby reversed, and the cause is re-manded for further proceedings consistent with this decision and law.

> *Judgment reversed and*
> *cause remanded.*

MOYER and NORRIS, JJ., concur.