42 F.3d 1388
 23 Media L. Rep. 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
H. Garrett FREY, Plaintiff-Appellant,
v.
MULTIMEDIA, INC., and Multimedia Entertainment, Inc.,
Defendants-Appellees.
 No. 93-4006.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1994.
 
 Before: KENNEDY, CONTIE, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, H. Garrett Frey, appeals the order of the district court denying his motion for judgment as a matter of law or, in the alternative, his motion for a new trial in this diversity action for liable which plaintiff brought against defendant-appellee, Multimedia, Inc.
 
 I.
 
 2
 In April 1989, the financial empire of Charles H. Keating, a former Cincinnatian, collapsed. A number of Cincinnati investors had purchased stocks and bonds in Keating's American Continental Corporation ("ACC") through Queen City Securities Corporation, owned and operated by plaintiff Frey. The Sisters of Charity of Mt. St. Joseph, Ohio, was one of these investors. Plaintiff Frey was a long-standing member of the Investment Committee which the Sisters of Charity had organized to give them investment advice.
 
 
 3
 On the eleven p.m. news broadcast on December 12, 1989, Steve Forest, a reporter for WLW-T, Channel 5, a television station owned and operated by defendant Multimedia, reported about the loss of the Sisters of Charity. During the course of the broadcast, plaintiff alleges that Steve Forest defamed him by stating that as the head of Queen City Securities, he may have been "responsible for making [an] investment [for the Sisters of $440,000 in ACC bonds] single handedly," and that he may have "bypassed the religious order's financial advisory committee in the process." Forest also reported that he had a source who said that "the purchase was presented to the committee [by Frey] as a fait accompli, a done deal."
 
 
 4
 On December 11, 1990, plaintiff filed a complaint in the United States District Court for the Southern District of Ohio, based on diversity, alleging that these statements about him were false and defamatory and were published negligently and/or recklessly. During the trial, it was established that Queen City Securities purchased the ACC bonds for the Sisters when a trade was put through on May 6, 1986. On May 7, 1986, Frey met with the Investment Committee to discuss the purchase of the bonds. Following the conclusion of all the evidence, the jury returned a verdict for defendants, finding that Frey failed to prove by clear and convincing evidence that the broadcast was false.
 
 
 5
 On February 12, 1993, defendant filed a motion for judgment as a matter of law or, in the alternative, a motion for a new trial. The district court found that the May 6, 1986 confirmation slip of the sale of the bonds to the Sisters of Charity provided the jury with reasonable grounds for finding that plaintiff Frey had failed to prove by convincing evidence that the broadcast was false. Plaintiff timely filed this appeal.
 
 II.
 
 6
 A judgment as a matter of law may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence. The evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing all reasonable inferences from the evidence in his favor. Therefore, in the present case we must first determine whether when considering all evidence in the light most favorable to defendants, reasonable minds could only conclude that plaintiff met his burden of proving all the elements of his defamation claim. Collins v. United States, 848 F.2d 740, 742 (6th Cir.1988) (per curiam).
 
 
 7
 After a careful review of the evidence produced at trial, we have determined that a reasonable juror could conclude that plaintiff did not meet this burden. The broadcast never said that the Sisters were forced to accept or keep the investment made by Frey. The broadcast indicated instead that when Frey made the investment in the ACC bonds, he did it before he obtained approval and bypassed the religious order's financial advisory committee in the process, which was not the ordinary procedure. There was substantial documentation in the record to indicate a purchase of the bonds by Queen City Securities for the Sisters of Charity on May 6, 1986 prior to the meeting held on May 7, 1986 when the Investment Committee discussed whether the bonds should be purchased or not. Although at trial, Frey testified that his nephew Trey Knollman, an officer of Queen City Securities, must have made a mistake and put the May 6, 1986 purchase through accidentally, he presented no other evidence that the mistake occurred as he alleged. If the purchase was made on May 6, 1986 before obtaining the approval of the Investment Committee, there was substantial evidence to indicate that this purchase was not made according to ordinary procedures whether the Investment Committee members knew about it or not. Also if the purchase was made the day before approval, it was in fact a "done deal" at the time it was presented to the Investment Committee. The news reporter stated that the source had said that the purchase was presented as a fait accompli, which the jury could reasonably believe was true, because the evidence indicated that, in fact, the purchase was a fait accompli.
 
 
 8
 Thus, when the evidence is construed in defendants' favor, we believe there was a legally sufficient basis for a reasonable juror to conclude that Frey failed to prove the falsity of the Multimedia Broadcast by clear and convincing evidence. The district court is affirmed on this issue.
 
 III.
 
 9
 After deliberating for about three hours, the jury asked the court the following questions: "Did Garrett Frey have to prove the whole broadcast false, or just a part? Is Channel 5 responsible for the quote from the source?" The court answered the jury's question as follows:
 
 
 10
 Please consider all of the legal evidence in the entire instructions of law to answer your questions. Additionally, please refer to the definition of falsity, page 21, and the definition of unreasonably failed to attempt to discover, page 22 of the charge.
 
 
 11
 To determine whether reversal on the basis of prejudicial jury instructions is appropriate, the court must consider whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried. Teal v. E.I. DuPont de Nemours & Co., 728 F.2d 799, 802 (6th Cir.1984). We believe that in the present case the jury instructions to which the district court referred the jury clearly informed the jury of the relevant considerations. The district court is affirmed on this issue.
 
 IV.
 
 12
 Plaintiff finally contends that the district court erred in its decision denying his motion for in camera inspection of unredacted documents. Plaintiff had requested the production of documents from defendants seeking to inspect all "documents, memoranda, notes, ... and all other data compilations, writings and recordings which relate to H. Garrett Frey, Charles Keating, American Continental Corporation, and Lincoln Savings and Loan" in their possession and control which were prepared during the period January 1, 1989 to the time of the request.
 
 
 13
 After reviewing ORC Sec. 2739.04, which "arm[s] radio and television news reporters with an absolute privilege to protect the identity of their informants in any judicial proceeding," State v. Geis, 2 Ohio App.3d 258, 263 (1981) (emphasis added), we do not believe the district court abused its discretion in determining that Multimedia should be allowed to submit its documents for in camera inspection in redacted form in which the identity of the confidential source would be deleted. In the present case, the district court was concerned whether providing information about the identity of sources, including address and telephone numbers, could result in the information becoming part of a public record of could be argued to constitute some sort of waiver of the confidentiality of the source's identity. The district court did not abuse its discretion in regard to this issue and is affirmed.
 
 V.
 
 14
 The judgment of the district court is AFFIRMED.