SVOBODA, Appellee,

v.

CLEAR CHANNEL COMMUNICATIONS, INC. et al., Appellants.

[Cite as *Svoboda v. Clear Channel Communications, Inc.*, 156 Ohio App.3d 307, 2004-Ohio-894.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–02–1302.

Decided Feb. 27, 2004.

308

C. Thomas McCarter, Frederick Gittes and Kathaleen Schulte, for appellee.

Thomas G. Pletz and Neema M. Bell, for appellants.

---

KNEPPER, Judge.

{¶ 1} This is an interlocutory appeal from the judgment of the Lucas County Court of Common Pleas, which, on September 27, 2002, in response to a discovery request, ordered appellant Tricia Tischler, news director for WVKS (92.5 FM), to disclose the identity of the person who told her that appellee, Sandra Svoboda, was "dating" John Block, co-publisher of The Toledo Blade ("The Blade"). For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} The following facts are pertinent to our consideration of this appeal. This matter arose out of a suit filed by Svoboda, a staff reporter for The Blade, who worked the University of Toledo beat, against Dennis Schaffer, Fred LeFebvre, appellant, and their employer, Clear Channel Broadcasting, Inc., and its parent company, Clear Channel Communications, Inc. In her amended complaint, Svoboda sued defendants on the bases of defamation, invasion of privacy, and intentional infliction of emotional distress.

{¶ 3} Svoboda's claims arise out of alleged statements that were made by Schaffer, LeFebvre, and appellant, on the air in October 1999, during a radio segment called "The Breakfast Club." In general, it is alleged that the members of The Breakfast Club accused Svoboda of having a sexual/personal relationship with Block that caused her to negatively slant her articles regarding the University of Toledo in accordance with his views. The broadcasted program included, in part, remarks that Svoboda was Block's "toy," that Block was "putting it to her," and that Block would "leave the money on the dresser."

{¶ 4} During her September 7, 2000 deposition, which was taken before she was added as a defendant in this action, appellant testified that she received information that Svoboda and Block were "dating" from a confidential source. Appellant testified that she was told of this dating relationship during a brief phone conversation, which she either initiated or received while at work. Appellant also testified that she knew her source and that her source had given her information about other topics previously. Relying on R.C. 2739.04, appellant declined to give any particulars regarding her informant that could be used to reveal his or her identity.

{¶ 5} Appellant could not provide an approximate date or time frame as to when the call took place and did not make any record of the conversation. Appellant further testified that her source did not have first-hand knowledge of the purported relationship; rather, the source had heard of the relationship from

some other, unknown person. Appellant never inquired of her source concerning the origin of this alleged fact, the identity of her source's source, how her source's source could have obtained knowledge of a dating relationship between Svoboda and Block, or whether her source's source may have had a motive or agenda that would be a reason to distort information about Block or Svoboda. Appellant testified that, at the time of the phone conversation, she did not consider using this as a news-related item on the air; however, she testified that she later confirmed for and/or told Schaffer and LeFebvre that Svoboda and Block were dating.

{¶ 6} During discovery, Svoboda sought to compel the identity of appellant's alleged source. Although Svoboda's written motion to compel was never placed on the court's docket, appellant's response and Svoboda's reply were, and the matter came for hearing before the trial court on September 11, 2002. The trial court granted Svoboda's discovery request and ordered appellant to disclose the identity of the individual who had informed her in a telephone call that he or she had heard that Block and Svoboda were dating. In response to the trial court's ruling, appellant raises the following sole assignment of error in this interlocutory appeal:

{¶ 7} "The trial court's discovery order compelling appellant, WVKS FM's news director, to disclose her confidential source of information that appellee was dating John Block violates the express wording of R.C. 2739.04, its legislative purpose, and the balance struck between the free flow of information and an individual's interest in reputation. Consequently, the discovery order amounts to an abuse of the trial court's discretion to regulate discovery."

{¶ 8} Specifically, appellant argues that the wording of R.C. 2739.04 is absolute and unequivocal and that the trial court abused its discretion in ordering her to disclose the identity of her source of information, which is squarely protected against disclosure pursuant to R.C. 2739.04, and that the trial court improperly narrowed the scope of R.C. 2739.04. In particular, appellant argues that the trial court erred in ordering disclosure of the source's identity on the bases that the information received by appellant was mere gossip and that appellant was nothing more than a "rip and read wire service news person."

{¶ 9} We initially note that a trial court enjoys considerable discretion in the regulation of discovery proceedings. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. Thus, "absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." (Citations omitted.) *State ex. rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is

unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 10} In *Branzburg v. Hayes* (1972), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626, the United States Supreme Court declined "to grant newsmen a testimonial privilege that other citizens do not enjoy." Id., 408 U.S. at 690, 92 S.Ct. 2646, 33 L.Ed.2d 626. As such, the court held that there is no constitutional right, and that no privilege exists at common law, which allows reporters or newsmen to refuse to reveal the identity of their confidential sources of information. Id. "The prevailing view is that the press is not free to publish with impunity everything and anything it desires to publish. Although it may deter or regulate what is said or published, the press may not circulate knowing or reckless falsehoods damaging to private reputation without subjecting itself to liability for damages, including punitive damages, or even criminal prosecution." Id., 408 U.S. at 683, 92 S.Ct. 2646, 33 L.Ed.2d 626.

{¶ 11} Nevertheless, the *Branzburg* court recognized that federal and state legislatures have the "freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned and, equally important, to refashion those rules as experience from time to time may dictate." Id., 408 U.S. at 706, 92 S.Ct. 2646, 33 L.Ed.2d 626. The court further stated:

{¶ 12} "There is also merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems * * * in their own areas. * * * [W]e are powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute." Id.

{¶ 13} At the time of *Branzburg*, Ohio already had adopted such legislation in R.C. 2739.04, with respect to broadcasters, and R.C. 2739.12, with respect to newspaper reporters. Central to this discovery issue is the protection provided pursuant to R.C. 2739.04, which states:

{¶ 14} "No person engaged in the work of, or connected with, or employed by any * * * commercial radio broadcasting station * * * for the purpose of gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news shall be required to disclose the source of any information procured or obtained by such person in the course of his employment, in any legal proceeding, trial, or investigation before any court * * *.

{¶ 15} "Every * * * commercial radio broadcasting station * * * shall maintain for a period of six months from the date of its broadcast thereof, a record of those statements of information the source of which was procured or obtained by

persons employed by the station in gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news.

{¶ 16} "As used in this section:

{¶ 17} "(A) 'Record' includes a tape, disc, script, or any other item or document that sets forth the content of the statements that are required by this section to be recorded. * * *"

{¶ 18} The purpose of R.C. 2739.04 is to foster the free flow of information between a source and a reporter. *State v. Geis* (1981), 2 Ohio App.3d 258, 261, 2 OBR 286, 441 N.E.2d 803. "[T]he legislative intent behind R.C. 2739.04 is to protect the relationship between an informant, who desires to give information to a radio or television news reporter but who fears publicity or the possible retribution arising from the discovery that he is the source of information that has been broadcasted, and a radio or television news reporter." Id.

{¶ 19} Although the statute protects the identity of the source, "[t]he privilege claimed is that of the reporter, not the informant * * *." *Branzburg,* 408 U.S. at 695, 92 S.Ct. 2646, 33 L.Ed.2d 626. Privileges, being in derogation of common law, are to be strictly construed. See *Weis v. Weis* (1947), 147 Ohio St. 416, 428, 34 O.O. 350, 72 N.E.2d 245. The party claiming a privilege has the burden of establishing it. See *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 178, 2 O.O.3d 373, 358 N.E.2d 521. As the person claiming the privilege, appellant has the burden of establishing that she, and her contact, fall within the confines of R.C. 2739.04.

{¶ 20} Appellant argues that the trial court was required to provide her the absolute protection afforded by R.C. 2739.04 because, based on appellant's testimony, "without any serious question," her contact with her source fell "within the purview of R.C. 2739.04." Appellant argues that the only threshold requirement of R.C. 2739.04 is that she be found to be "* * * employed * * * by any * * * station * * * for the purpose of gathering * * * or broadcasting news * * *," and that, once this threshold requirement alone is satisfied, she is entitled to the statutory shield. We disagree.

{¶ 21} Ohio courts have held that the protection afforded by R.C. 2739.04 is "an absolute privilege to protect the identity" of reporters' informants. *Geis,* 2 Ohio App.3d at 263, 2 OBR 286, 441 N.E.2d 803; *House of Wheat v. Wright* (Oct. 10, 1985), Montgomery App. No. 8614, 1985 WL 17381; and *In re April 7, 1999 Grand Jury Proceedings* (2000), 140 Ohio App.3d 755, 766, 749 N.E.2d 325 (concurring opinion). Even information that could potentially lead to the disclosure of the identity of a source has been protected by the reporter's shield statute. See, e.g., *In re April 7, 1999 Grand Jury Proceedings.* Generally, only in cases where the reporter's shield statute is potentially in conflict with a

constitutional right, e.g., a criminal defendant's Sixth Amendment rights, have Ohio courts engaged in a balancing test to determine whether the situation justifies finding an exception to the statute. See, e.g., *In re McAuley* (1979), 63 Ohio App.2d 5, 17 O.O.3d 222, 408 N.E.2d 697; and *Geis,* supra. Since no constitutional right is in conflict with the reporter's shield statute in civil actions, including actions for libel, no balancing test should be applied and no exceptions to the privilege should be granted. *House of Wheat,* supra. Accordingly, with respect to civil cases in particular, it is quite clear that the privilege enjoyed by a broadcaster or reporter, pursuant to R.C. 2739.04, is absolute.

{¶ 22} Nevertheless, contrary to appellant's argument, in drafting R.C. 2739.04, the legislature did not provide a carte blanc privilege to anyone employed "* * * for the purpose of gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news * * *." Rather, the statute specifically states that it applies only to those persons so employed who "procured or obtained" "information," from a "source," "in the course of his employment." Accordingly, we find that in order to be entitled to the absolute privilege provided by R.C. 2739.04, appellant must first establish that she was (1) employed by a commercial radio station "for the purpose of gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news"; (2) that she "procured or obtained" "any information" from "a source"; and (3) that she "procured or obtained" such information "in the course of [her] employment."

{¶ 23} Only after appellant has established the application of the statute to her and her contact, in this particular situation, does the privilege provided by R.C. 2739.04 become absolute. See *House of Wheat,* supra. Whether appellant has established her burden in this discovery issue is a matter for the trial court to determine within its discretion. See *Manofsky,* supra. Upon review, we must therefore consider whether the trial court abused its discretion in determining that, under the facts in this case, appellant was not entitled to the protection afforded by R.C. 2739.04.

{¶ 24} Clearly, appellant established that she was employed as the station's news director, hired for the purpose of gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news. However, contrary to appellant's argument, this fact alone does not entitle appellant to the protection afforded R.C. 2739.04. Rather, as noted above, appellant must also establish that she "procured or obtained" "any information" from "a source" and that she "procured or obtained" such information "in the course of [her] employment." See R.C. 2739.04.

{¶ 25} The trial court found that appellant held many non-news-related activities in relation to her employment and that she was not behaving in a news-related capacity at the time of the phone call with her alleged source. Specifical-

ly, despite the fact that appellant's "source" did not have first-hand knowledge concerning the purported relationship between Svoboda and Block, the trial court noted that appellant nevertheless made no inquiry of her "source" regarding the identity of the person who provided him or her with the information; how the third party might know of such a relationship; or, whether, "in fact, [the third party] was the originator [of the information], or whether that third party had heard it from a 'fourth party.' " The trial court further stated:

{¶ 26} "Indeed, at the time of her deposition, and presumably through the date of this writing, [appellant] has and had no idea of who the real source of the rumor was. She didn't ask: whether out of reckless disregard; incompetence; because she heard what she wanted to hear; or simply because she wasn't functioning as a news person at the time."

{¶ 27} Additionally, because appellant's alleged source admittedly did not have first-hand knowledge of any dating relationship between Svoboda and Block, the trial court found that appellant's alleged source was not, in fact, a "source of any information" but was merely a person "passing along something he or she had heard from a third party * * * and a third party about whom [appellant] knew nothing. It was idle gossip, at best and, of course, based upon all of the discovery filed to date in this case, it would appear to be inaccurate gossip."

{¶ 28} R.C. 2739.04 states that the privilege applies to any person who is employed for the purpose of "gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news." Therefore, in order to establish that she was acting within "the course of [her] employment," when she heard about the alleged relationship between Svoboda and Block, we find that appellant must prove that she was "gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news" at that time.

{¶ 29} Appellant asserts that, based on the following facts, she established the applicability of R.C. 2739.04:(1) she was the news director at the station; (2) her duties included gathering news from multiple resources, including the Associated Press and through conducting interviews, both by telephone and by going out in the field; (3) she spoke with her source while at work; (4) she had used her source as a source of news in the past; and (5) she knew that the source had previously provided her with reliable, accurate, and verified information. While we note that all of these factors are supported by the record, we nevertheless find that these factors do not ipso facto establish, with respect to this particular conversation with her contact, that appellant was acting within "the course of [her] employment."

{¶ 30} Moreover, in light of all of the evidence, we agree with the trial court that appellant failed to establish that she "procured or obtained" this particular information from her contact "in the course of [her] employment," i.e., while she

was "gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news." In particular, we find that the following factors support a finding that appellant was not acting as "news director" at the time of the phone call: (1) appellant's behavior on the phone did not indicate that she was gathering, procuring, or compiling news when she spoke with her contact because, at the very least, she asked no investigatory questions; (2) appellant made no record of the conversation with her contact; (3) appellant did not consider the information to be newsworthy at the time she obtained it; and (4) appellant did not even broadcast the information she obtained during a news segment of The Breakfast Club.

{¶ 31} If appellant were acting in the course of her employment and were actually "gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news," then there would have been some indicia of this. We find, however, that there is simply no evidence in the record to suggest that appellant was acting in her capacity as news director when she heard about Svoboda and Block. In particular, we note appellant's entire lack of any investigation, or verification with her contact, regarding the reliability of this second-hand information. We find significant, as did the trial court, the fact that appellant made no inquiry of her contact regarding the identity of the person who provided the contact with the alleged information, whether the contact's source had personal knowledge of the alleged relationship, or even whether the contact's source was an individual in a position to have first-hand information regarding this alleged dating relationship.

{¶ 32} We also find that appellant's lack of recordkeeping, regarding her conversation with her contact, indicates that she was not acting within the course of her employment. If she had been behaving as a news director, then she would have made "* * * a record of those statements of information the source of which was procured or obtained by persons employed by the station in gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news," as required by R.C. 2739.04. Appellant, however, made no record of the conversation she had and, consequently, could not provide even an approximate time period as to when she would have had this conversation, or even whether she or her contact had initiated the call.

{¶ 33} Additionally, we find significant, as did the trial court, the fact that appellant did not consider the information to be newsworthy at the time of the phone call. This is not to say that, whenever a reporter does not immediately appreciate the significance or newsworthiness of what he or she has heard, he or she is precluded from enjoying the privilege provided by R.C. 2739.04. The belief that the information is not newsworthy does not in and of itself mean that the reporter was not acting in her capacity as a reporter at the time she obtained the

information. A reporter may still establish that she was acting within the course of her employment when she obtained the information, even though she did not immediately consider the information newsworthy.

{¶ 34} In this case, however, when coupled with the fact that appellant asked no followup questions and kept no record of the conversation, appellant's statement that she did not consider the information newsworthy is quite revealing regarding the issue of whether she was acting as "news director" when she heard that Svoboda and Block were dating. Appellant did not believe that what she was being told was news and, accordingly, took no action to gather, procure, or compile this "news" regarding Block and Svoboda.

{¶ 35} This case does not present a situation where a news reporter was "gathering, procuring [or] compiling * * * news" and heard something that she did not consider to be newsworthy but later determined it to be newsworthy. To the contrary, as a whole, the facts in this case indicate that appellant was not behaving as a news director during the phone conversation. Her statement that she did not believe that the information was newsworthy is simply another factor that can be used to support such a finding.

{¶ 36} We further find the fact that the alleged information about Svoboda and Block was not broadcasted during any news segment of The Breakfast Club provides additional support for a determination that appellant was not acting in the course of her employment as news director during the phone conversation. Clearly, R.C. 2739.04 does not require that, before a reporter is protected from having to disclose her "source of any information," she must first broadcast the information obtained as "news." We do not find otherwise. Rather, we find that, along with the other relevant factors in this case, the fact that Svoboda's and Block's alleged dating relationship was never even used as a news item further supports a finding that this information was not gathered, procured, or compiled by appellant while acting in the course of her employment as news director. If the alleged information had been broadcasted as news, during a news segment, then such a factor could have gone toward establishing that appellant was acting within the course of her employment when she obtained the information; however, it was never used as such.

{¶ 37} In light of the evidence to the contrary, as discussed above, we find that the facts relied upon by appellant, e.g., that she was the news director, had the conversation on the phone while at work, and obtained the information from a source known to her from previous investigations, do not establish that appellant was acting in the course of her employment during this phone conversation, with her contact, on this particular occasion. Accordingly, we find that the trial court did not abuse its discretion in determining that appellant was not acting in the course of her employment, "whether out of reckless disregard; incompetence;

because she heard what she wanted to hear; or simply because she wasn't functioning as a news person at the time," when she obtained this alleged information about Svoboda and Block.

{¶ 38} We further find that appellant failed to establish that her contact was "a source of any information," as contemplated by the statute. The terms "source" and "information" are not defined in the statute. Accordingly, "source of any information" must be "read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

{¶ 39} In determining whether appellant's contact was actually a "source," as used in the context of the statute, we look to the common usage of the word "source." "Source" is defined as "1 * * * **b** (1): a point of origin or procurement: BEGINNING (2): one that initiates: AUTHOR; * * * (3): one that supplies information * * *." Merriam–Webster's Collegiate Dictionary (1996) 1123. Thus, a "source" is "a point of origin" or one who initiates or supplies "information."

{¶ 40} "Information" is defined as "**1**: the communication or reception of knowledge or intelligence **2a** (1): knowledge obtained from investigation, study, or instruction * * *." Id. at 599. Thus, "information" is the communication or reception of "knowledge," obtained from investigation or study.

{¶ 41} "Knowledge" is defined as "**1** *obs* : COGNIZANCE **2a** (1): the fact or condition of knowing something with familiarity gained through experience or association * * * **b** (1): the fact or condition of being aware of something * * *." Id. at 647. The verb "to know" is defined as "**1a** (1): to perceive directly: have direct cognition of * * * (2): to be acquainted or familiar with (3): to have experience of **2a**: to be aware of the truth or factuality of: be convinced or certain of * * *." Id. at 646–647. Thus, in order to have "knowledge" of a fact or to know the truth or factuality of something, one must have had some experience, perception, acquaintance, association or familiarity with the subject-matter.

{¶ 42} In this case, the subject-matter at issue is the existence of a dating relationship between Svoboda and Block. Appellant's contact did not have first-hand knowledge of such a relationship and only had heard of the alleged relationship from an unknown third party. As such, we find that appellant's contact had no "knowledge" of a dating relationship, insofar as that person did not "know" of any dating relationship through "familiarity gained through experience or association" with either Svoboda or Block and did not "perceive" or "experience" any dating relationship. In fact, appellant's contact could not even have been "aware" of any dating relationship because "awareness" is defined as

"having * * * realization, perception, or knowledge," id. at 81, none of which appellant's contact possessed.

{¶ 43} At best, appellant's contact had "knowledge" of a rumor. A rumor, however, is not "information," because the person perpetuating the rumor lacks any "knowledge" regarding the bases for the rumor. A person passing on a rumor, obtained from another, has not gained any "knowledge" of a fact or condition through experience or association and is not aware of the truth or factuality of the rumor, through realization or perception. At times a rumor may be factual; however, it is the lack of "knowledge" on behalf of the person perpetuating the rumor that prevents a rumor from being considered "information." Accordingly, we find that a rumor is not "information." To find otherwise would be a perversion of the word "information" and would be contrary to its common usage.

{¶ 44} We therefore find that without actual "knowledge" of a dating relationship, appellant's contact was incapable of supplying "information" to appellant, because the contact had no "information" about a dating relationship to supply. Since a "source" is someone who supplies "information," appellant's contact was not a "source" in this instance.

{¶ 45} Regardless of how reliable a person's information has been in the past, if he or she lacks personal knowledge regarding the subject matter at issue, by definition, that person is not a "source," and the rumor perpetuated by that person is not "information." Conversely, if the person had first-hand knowledge concerning the truth or factuality of the contents of his or her statement, gained through experience, perception, or association, then there would be no rumor and that person would be a "source" of "information."

{¶ 46} Pursuant to the clear language in the statute, which states that the privilege applies only to "the source of any information," we find that the legislature clearly did not intend to extend the privilege provided by R.C. 2739.04 to persons who were not "sources." Accordingly, we find that a "source of any information," as referred to in R.C. 2739.04, does not include as a "source" a person who lacks first-hand knowledge regarding the subject matter, and it does not include as "information" rumor and innuendo, the subject matter of which the person passing on the rumor has no first-hand knowledge. We therefore find that the trial court did not abuse its discretion in determining that appellant's contact was not a "source" and that the rumor passed on by that person was not "information" as contemplated by R.C. 2739.04.

{¶ 47} Based on the foregoing, we find that the trial court did not abuse its discretion in determining that appellant had failed to establish her burden regarding the applicability of R.C. 2739.04 under the facts in this case. Addition-

ally, we find that it is important to stress that the trial court did not ignore the express wording of R.C. 2739.04 and did not fail to apply the statute's absolute privilege of nondisclosure. Rather, based on the facts in this case, the trial court determined that the statute did not apply to this situation, in the first instance, because appellant was not acting "in the course of [her] employment" when she spoke with her alleged source; her alleged source was not a "source"; and the gossip about Svoboda and Block was not "any information." As stated above, only if a reporter first establishes that she qualifies under the statute can she then enjoy the absolute privilege provided by it.

{¶ 48} Moreover, we find that the legislative purpose of R.C. 2739.04, and the free flow of communication between sources and reporters, were not infringed upon by the court's ruling. As held above, a person who merely perpetuates a rumor that he or she heard from another is not a "source" of the subject matter contained in the rumor. The purpose of R.C. 2739.04 is to protect the relationship between a reporter and a source. Therefore, since a person who spreads rumors is not a "source," the court's ruling does not interfere with the reporter/source relationship. Additionally, if a person is not a "source," he or she is clearly not in a position of confidence with the person or persons who are the subject of the rumor. Without such a connection between the parties, any fear of publicity or possible retribution is unfounded.

{¶ 49} Accordingly, appellant's sole assignment of error is found not well taken. We therefore affirm the discovery order entered by the Lucas County Court of Common Pleas on September 27, 2002. Costs of this appeal are to be paid by appellant.

Judgment affirmed.

PIETRYKOWSKI, J., concurs.

JUDITH ANN LANZINGER, J., dissents.

LANZINGER, Judge, dissenting.

{¶ 50} I respectfully dissent. As I conclude that R.C. 2739.04 applies, I would reverse the trial court's order requiring disclosure of the identity of Tischler's source as being contrary to the statute.

{¶ 51} First, with respect to our standard of review, even though a trial court has broad discretion in regulating discovery, the interpretation and application of a statute is reviewed under a de novo standard. *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721, 756 N.E.2d 1258, citing *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596. Statutory interpretation involves a question of law and, thus, deference is not owed to the trial court. In its discovery entry, the trial court created a category of broadcaster not entitled to the protection of R.C.

2739.04, i.e., one who serves a dual function, one being "non-news" related. The majority, however, while recognizing that "with respect to civil cases * * * the privilege enjoyed by a broadcaster or reporter, pursuant to 2739.04, is absolute," refuses to apply the statute because Tischler was not in the scope of her employment at the time of the phone call, and her source did not provide "information."

{¶ 52} By its terms, R.C. 2739.04 requires that one claiming the protection of the identity of a source under the broadcaster's privilege must show that she is (1) employed by a commercial radio station (2) for the purpose of gathering, procuring, compiling, editing, disseminating, publishing, or broadcasting news, and (3) obtained information from source in the course of her employment.

{¶ 53} The majority has grafted on several factors to be considered to determine whether someone has established the status of being "in the course of employment," i.e., "behaving in a news-related capacity;" working on a story at the time information is received; asking "investigatory questions" when first obtaining information; verifying the reliability of second-hand information; making a record of the conversation[1]; and considering the communication to be immediately newsworthy.

{¶ 54} With respect to whether she was in the course of her employment, Tischler testified during her deposition that she spoke with her source on the telephone while she was at work.[2] Tischler acknowledged that she did not attempt to discover the identity of her source's source and that she did not make any independent efforts to investigate the information after the phone call. However, she testified that her information was confirmed by LeFebvre who told her that he also had a source who informed him that Svoboda and Block were dating. Tischler also admitted that, at the time she spoke with her source regarding Svoboda and Block, she was not thinking about using the information for the show and had never discussed with Schaffer or LeFebvre the idea of discussing it on the show.[3] Ultimately, it was Schaffer who initiated the discussion on the air, so that fact that she did not broadcast the information during a news segment is irrelevant to whether Tischler was in the course of her employment at the time she obtained the information.

---

1. The R.C. 2739.04 record that the majority references is required to be maintained after the broadcast of the information and, therefore, is not relevant to deciding whether Tischler was in the course of her employment when she heard the information.

2. Tischler testified that she could not remember whether she called the source or the source called her.

3. This consideration by Tischler indicates that she was in the course of her employment rather than not.

{¶ 55} While broadening the meaning of "in the course of employment," the majority simultaneously narrows the meaning of the term "any information." R.C. 2739.04 grants broadcasters the privilege to refuse to reveal the "source of *any* information." The majority, however, relies on single-word definitions to conclude that Tischler did not obtain "information." The first definition of "information," however, includes "communication," and one definition of "communicate" includes "to convey knowledge of or information about: make known." Interpreting the words "source" of "any information" to mean "someone with first-hand knowledge" of "truth or factuality of statements," specifically excluding rumor, strains the usual meaning of these words.

{¶ 56} "Dictionary definitions are not statutes that determine as a matter of law what meanings words must have. Rather, dictionaries record common usage. In statutory interpretation, dictionaries are appropriately referred to to determine what the legislature probably meant. But the touchstone of statutory interpretation is the legislature's purpose, not any supposed 'plain meaning' of the words it used." (Citation omitted.) *Dayton v. Schenck* (1980), 63 Ohio Misc. 14, 16, 16 O.O.3d 97, 409 N.E.2d 284.

{¶ 57} The legislative intent behind R.C. 2739.04 is to protect the relationship between an informant and a radio or television news broadcaster.[4] *State v. Geis* (1981), 2 Ohio App.3d 258, 261, 2 OBR 286, 441 N.E.2d 803. Such a relationship is to be fostered so as to protect the free flow of information from the informant to the reporter. Id. Under the majority's definition of "information," a source may be reluctant to tell what he or she knows because the source may not have a sufficient basis of knowledge.

{¶ 58} "News" is an all-encompassing category these days. As one court has noted: "[W]e live in a society in which people are bombarded with all types of information, from publications which actually do report current events to those esoteric publications which describe the mating rights of penguins in the Antarctic at springtime. And it is the recognition that this society demands the open and full flow of information and ideas whatever they may be and from wherever they may come." *In re Petition of Burnett* (Law Div.1993), 269 N.J.Super. 493, 635 A.2d 1019, 22 Media Law Rptr. 1402.

{¶ 59} It seems that neither the trial court nor the majority wishes to "reward" Tischler with a privilege protecting the identity of the person with whom she spoke. We are, however, not ruling on the merits of this case. Certainly, members of the media may not circulate knowing or reckless falsehoods damag-

---

4. Although the majority uses the term "reporter" broadly, R.C. 2739.04, the broadcaster's privilege, does not refer to a person employed by a newspaper—that individual is covered under R.C. 2939.12, an equivalent statute.

ing to private reputation without subjecting themselves to liability for damages, including punitive damages, or even criminal prosecution. *Branzburg v. Hayes* (1972), 408 U.S. 665, 683, 92 S.Ct. 2646, 33 L.Ed.2d 626. That is not the issue, however. We are merely reviewing the application of a statute to a claimed privilege against furnishing the name of a broadcast source during discovery for a civil case. That privilege is written broadly. It is to apply to someone like Tischler, employed by a broadcast station as a news broadcaster and who obtains "any information" in the course of her employment. The majority pares down the statute to protect a source's identity only if a person is employed and acting in the capacity of a reporter, that is, actually "gathering, procuring, compiling, editing, disseminating, publishing or broadcasting news" at the exact moment she receives first-hand knowledge—i.e., information.

{¶ 60} This is a dangerous narrowing of the statutory privilege provided to a broadcaster. The Ohio legislature has recognized the import of gathering information by the broadcast media and specifically permits a broadcaster to protect the source of information. Because R.C. 2739.04, as written by the General Assembly, is so broad, I would find that the trial court erred in denying Tischler the statute's protection not to reveal the identity of her source, and would reverse the decision below.