GZK, INC., Appellee,

v.

SCHUMAKER LIMITED PARTNERSHIP et al., Appellants.

[Cite as *GZK, Inc. v. Schumaker Ltd. Partnership*,
168 Ohio App.3d 106, 2006-Ohio-3744.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21166.

Decided July 21, 2006.

</div>

Neil F. Freund, for appellee.

Scott A. King, for appellants.

BROGAN, Judge.

{¶ 1} Food, Folks & Fun, Inc. ("Food–Folks"), appeals from the trial court's decision and entry ordering it to provide certain financial documents to GZK, Inc., pursuant to a subpoena.

{¶ 2} Food–Folks advances two related assignments of error on appeal. First, it contends that the trial court erred by ordering it to produce the documents in response to GZK's subpoena. Second, it claims that the trial court erred in refusing to place restrictions on the disclosure of its documents.

## I.   Factual and Procedural Background

{¶ 3} The record reflects that Food–Folks is in the business of operating Kentucky Fried Chicken and other fast-food franchises. GZK is in the business of operating Lee's Famous Recipe Fried Chicken and other fast-food franchises. As sellers of fried chicken, Food–Folks and GZK compete against one another in the region. Food–Folks is not a party to the present lawsuit, which involves a dispute between GZK and FFF Management, Inc. ("FFF"), a corporation that exists for the purpose of buying real estate and leasing it to Food–Folks for the operation of Kentucky Fried Chicken restaurants. Although they are distinct corporate entities, Food–Folks and FFF have the same directors and shareholders.

{¶ 4} In the present case, GZK asserted a cause of action against FFF for tortious interference with contractual relations. The claim stems from FFF's allegedly improper interference with GZK's efforts to purchase real estate in Miamisburg, Ohio, from Dorothy Schumaker. In particular, GZK asserted that FFF attempted to buy the real estate to enable Food–Folks to build and operate a Kentucky Fried Chicken franchise there, despite knowing that GZK had a right of first refusal to purchase the property. GZK sought lost profits and punitive damages for FFF's tortious interference.

{¶ 5} In the course of proceedings below, GZK served Food–Folks with a subpoena purportedly requesting "all financial and business documents."[1] Food–Folks responded by objecting to the subpoena pursuant to Civ.R. 45(C). Food–Folks asserted that the subpoena was vague and overbroad, that it requested documents that were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, that it sought discovery of trade secrets, that it improperly had been served by certified mail, that it had been served without a mileage fee, and that GZK had failed to offer reimbursement for reasonable costs incurred in complying with the subpoena.

{¶ 6} GZK then filed a "response in opposition" to the objections. The trial court construed this filing as a motion to enforce the subpoena. In its filing, GZK agreed to modify the scope of its subpoena and sought, "for the years 2001

---

1. We have been unable to locate a copy of the subpoena anywhere in the record. For purposes of our analysis herein, we are relying on the parties' undisputed representations about the contents of the subpoena and the manner in which GZK served it on Food–Folks.

through 2004, gross-sales figures, expenses, and operating costs, for all the Kentucky Fried Chicken stores under the control of Food, Folks & Fun in Montgomery, Miami, Greene, Warren, Preble and Clark counties." GZK also responded to each of Food–Folks's objections. With regard to Food–Folks's trade-secret objection, GZK argued as follows:

{¶ 7} "Due to Food, Folks & Fun's corporate structure and its position as FFF"'s operating arm, its financial documents are relevant and likely to lead to the discovery of admissible evidence. Even assuming the production of this information would constitute trade secrets and is otherwise confidential, this Court has previously ruled against FFF in this manner and ordered FFF's documents produced. As such, Food, Folks & Fun, being the same corporate entity, is required to produce the same. FFF and Food, Folks & Fun together constitute the same corporate entity involved in the action giving rise to the claims in this lawsuit. GZK is therefore entitled to financial documents that fully illustrate the entity's financial structure."

{¶ 8} Food–Folks then filed a memorandum in opposition to GZK's motion to enforce the subpoena. Therein, it responded to GZK's trade-secret argument as follows:

{¶ 9} "Food, Folks objected to producing its financial data on the grounds that it constituted trade secrets. GZK argues that (1) the Court has already ruled against FFF on this issue, and (2) Food, Folks is the same as FFF. GZK is simply wrong.

{¶ 10} "First, FFF has never raised a trade secrets objection to the Court. Since FFF never made that objection, the issue could not have been decided against it already.

{¶ 11} "Second, Food, Folks is not the 'same' entity as FFF. Food, Folks is not a party to this lawsuit, and is not bound by any prior rulings. Besides, because it is a third party, its concerns about the confidentiality of its data are different than those of either GZK or FFF.

{¶ 12} "Third, while the Court overruled GZK's trade secrets objection, the evidence before the Court was that GZK had waived that objection by failing to timely raise that objection. Food, Folks has timely raised the issue.

{¶ 13} "In any event, there is no reason that the Court should treat GZK and Food, Folks similarly. GZK placed its profitability at issue by suing to collect lost profits damages; Food, Folks has not."

{¶ 14} On June 16, 2005, the trial court filed a decision and entry "sustaining in part and overruling in part objections of Food, Folks & Fun to subpoena" and "sustaining in part and overruling in part GZK's motion to enforce subpoena." Therein, the trial court held that GZK's document request was overbroad. It

limited the subpoena to "gross sales figures, expenses and operating costs for all KFC restaurants under the control of Food, Folks & Fun in Montgomery County" from 2001 through 2004. As so limited, the trial court found that the requested documents were relevant and were reasonably calculated to lead to the discovery of admissible evidence.

{¶ 15} On the trade-secret issue, the trial court stated that GZK had taken the position that the requested documents were not trade secrets. The trial court also noted that it previously had found FFF's financial documents to be relevant and reasonably calculated to lead to the discovery of admissible evidence. The trial court then found that Food–Folks had failed to demonstrate how its confidentiality concerns were different from those of GZK or FFF. As a result, the trial court overruled Food–Folks's trade-secret objection to the subpoena. Finally, the trial court held that Food–Folks's actual knowledge of the subpoena rendered its argument about defective service meritless and that GZK's offer to pay a mileage fee and to reimburse Food–Folks for its expenses disposed of those issues. This timely appeal followed.[2]

## II. Analysis

{¶ 16} In its appellate brief, Food–Folks has divided its two assignments of error into four arguments. As a means of analysis, we turn first to Food–Folks's final argument, which states:

{¶ 17} "The trial court erred by enforcing a fatally defective subpoena."

{¶ 18} Food–Folks contends that the subpoena issued by GZK was fatally defective because it was delivered via certified mail by someone not authorized to serve it and because it did not include witness-attendance and mileage fees. Food–Folks also notes that no return of service was filed. In response, GZK insists that certified-mail service was proper. It also asserts that witness-attendance and mileage fees are not applicable here and, in any event, that defects in tendering the fees may be cured after service of the subpoena.

{¶ 19} The foregoing arguments implicate Civ.R. 45(B), which provides:

---

2. The parties agree that the trial court's decision and entry is a final, appealable order under R.C. 2505.02(B)(4) because it grants GZK a provisional remedy, it determines the action with respect to the provisional remedy and prevents a judgment in favor of Food–Folks, and Food–Folks would not be afforded a meaningful or effective remedy by an appeal following final judgment in the case. In applying the foregoing statute, courts have held that an order compelling disclosure of confidential information such as alleged trade secrets qualifies as a provisional remedy. See, e.g., *Gibson–Myers & Assoc. v. Pearce* (Oct. 27, 1999), Summit App. No. 19358, 1999 WL 980562; *Armstrong v. Marusic*, Lake App. No. 2001–L–232, 2004-Ohio-2594, 2004 WL 1144377, at ¶ 9–12.

{¶ 20} "A subpoena may be served by a sheriff, bailiff, coroner, clerk of court, constable, or a deputy of any [of the above], by an attorney at law, or by any other person designated by order of court who is not a party and is not less than eighteen years of age.  Service of a subpoena upon a person named therein shall be made by delivering a copy of the subpoena to the person, by reading it to him or her in person, or by leaving it at the person's usual place of residence, and by tendering to the person upon demand the fees for one day's attendance and the mileage allowed by law.  The person serving the subpoena shall file a return of the subpoena with the clerk.  If the witness being subpoenaed resides outside the county in which the court is located, the fees for one day's attendance and mileage shall be tendered without demand.  The return may be forwarded through the postal service or otherwise."

{¶ 21} The first sentence of Civ.R. 45(B) sets forth who may serve a subpoena.  The second sentence identifies how service may be made.  Food–Folks argues that service was improper here because a mail carrier delivered the subpoena by handing it to Food–Folks's statutory agent.  Food–Folks stresses that a mail carrier does not fit within any of the categories of individuals who are authorized to serve a subpoena.  Conversely, GZK argues that its attorney delivered the subpoena via the postal service.  Because an attorney is authorized to serve a subpoena by delivering it, GZK argues that its service was proper.

{¶ 22} Upon review, we find Food–Folks's argument to be the more persuasive.  In our view, an attorney does not deliver a subpoena to a person, within the meaning of Civ.R. 45(B), by placing it in the mail.  Rather, we believe that the term "delivering" in Civ.R. 45(B) contemplates an attorney or another individual who fits within one of the categories set forth in the first sentence actually presenting the subpoena in person.  Delivery of a subpoena by an attorney and delivery by a mail carrier, who is not an authorized server, are not the same thing.  If a subpoena could be served merely by placing it in the mail, the recipient would have no way of knowing whether the person who did so was an authorized server under the first sentence of Civ.R. 45.  In the present case, we conclude that the mail carrier, rather than GZK's counsel, served the subpoena by delivering it to Food–Folks's statutory agent.  Because the mail carrier was not an authorized server, service of the subpoena was defective.[3]  2

---

3.  On appeal, GZK stresses that Civ.R. 45(B) does not expressly preclude certified-mail service. Therefore, it argues that such service should be permitted.  We agree that nothing in the rule prohibits certified-mail service per se.  The problem is that mail service is accomplished by a mail carrier delivering a copy of a subpoena to the person to be served.  A mail carrier is not authorized to do so, however, unless he or she happens to be "a sheriff, bailiff, coroner, clerk of court, constable, or a deputy of any, by an attorney at law, or by any other person designated by order of court who is not a party and is not less than eighteen years of age."

Klein & Darling, Baldwin's Ohio Civil Practice (2004) 301, Section 45:8 ("Service of a subpoena by a person who does not fall within any of the listed categories is ineffectual").

{¶ 23} Our interpretation of Civ.R. 45(B) is consistent with the Tenth District's ruling in *Landoll v. Dovell* (March 9, 1995), Franklin App. Nos. 94APF05–617, 94APF05–623, 94APF05–618, and 94APF05–622, 1995 WL 100560. At issue in that case was whether the trial court had erred in dismissing contempt proceedings against a witness who had refused to testify at a scheduled deposition. Although the witness had received a subpoena, she argued that "because she was not a party to the action and the subpoena was delivered by certified mail, rather than personal service, she was not required to give testimony at the scheduled deposition." The Tenth District agreed, finding that certified-mail service did not comply with Civ.R. 45(B).

{¶ 24} Other portions of the Ohio Rules of Civil Procedure also support our conclusion. For example, Civ.R. 5(B), which governs the service of papers on parties, provides for an attorney either "delivering a copy to the person to be served" or "mailing it to the last known address of the person to be served." This express distinction between "delivering" and "mailing" lends support to Food–Folks's argument that "delivering a copy" of a subpoena under Civ.R. 45(B) cannot be performed by placing it in the mail.

{¶ 25} Finally, we draw additional support for our interpretation of Civ.R. 45(B) from R.C. 2151.29, which governs the service of subpoenas in juvenile court proceedings. R.C. 2151.29 provides: "Service of * * * subpoenas * * * shall be made by delivering a copy to the person * * * subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail." If "delivering a copy" of a subpoena included sending it via certified mail, then the second sentence of R.C. 2151.29 would be unnecessary. The statute recognizes, however, that "delivering" a subpoena differs from sending it through the mail. We reach the same conclusion with regard to Civ.R. 45(B).

{¶ 26} In finding that GZK's service of the subpoena satisfied Civ.R. 45(B), the trial court relied on *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 520 N.E.2d 1362. In *Denovchek*, the Ohio Supreme Court stated that "[w]here a subpoena is left at the business location or place of employment of a witness and where that witness has actual knowledge of the subpoena, a valid service of summons has been completed." Because the subpoena in this case was

---

There has been no suggestion in this case that the mail carrier who delivered GZK's subpoena fit within any of the foregoing categories.

delivered to Food–Folks's statutory agent and Food–Folks had actual knowledge of the subpoena, the trial court determined that service was valid under *Denovchek*. GZK advances the same argument on appeal.

{¶ 27} In our view, the trial court erred in relying on *Denovchek*. Nowhere in its opinion did the Ohio Supreme Court address *who* was required to deliver a subpoena or whether certified-mail service satisfied Civ.R. 45(B). *Denovchek* involved a process server leaving a subpoena on a tray at the front desk where the witness worked. The Ohio Supreme Court rejected the trial court's view that Civ.R. 45(B) disallowed such "constructive" service. Although the *Denovchek* court concluded that a subpoena could be left at a witness's place of employment, it did not address *who* was required to leave it there or whether it could be sent through the mail. Therefore, the trial court's (and GZK's) reliance on *Denovchek* is misplaced.[4]

{¶ 28} On appeal, GZK also cites *State v. Castle* (1994), 92 Ohio App.3d 732, 637 N.E.2d 80, to support its argument that certified-mail service is proper. At issue in *Castle* was whether placing a subpoena in the mail constitutes valid service under Crim.R. 17(D), which mirrors the language of Civ.R. 45(B). On review, the Ninth District held that such service was valid when the subpoena was sent to the witness's place of employment and the witness had actual knowledge of it. Id. at 734, 637 N.E.2d 80. In support of its holding, the *Castle* court quoted *Denovchek* for the proposition that " '[w]here a subpoena is left at the business location or place of employment of a witness and where that witness has *actual knowledge* of the subpoena, a valid service of summons has been completed.' " Id. As noted above, however, *Denovchek* did not address whether a subpoena could be served through the mail. Consequently, *Denovchek* does not support the *Castle* court's holding. The Ninth District cited no other authority for the proposition that mail service of a subpoena is permissible, and it did not address the fact that Crim.R. 17(D), like Civ.R. 45(B), requires delivery of a subpoena by an authorized server. As a result, we find *Castle* to be unpersuasive authority. Based on the reasoning set forth above, we hold that the trial court erred in enforcing a subpoena that was not served in compliance with Civ.R. 45(B).[5] Food–Folks's assignments of error are sustained insofar as they challenge the validity of GZK's subpoena.

---

4. We note, too, that the quoted language from *Denovchek* is dicta, given the Ohio Supreme Court's holding that the appellant had no right to appeal from the dismissal of a contempt motion against the witness who had failed to comply with the subpoena.

5. As for Food–Folks's argument about the absence of a return of service, we note that Civ.R. 45(B) does require that a return of service be filed with the clerk. We presume that GZK will take note of this requirement if it serves Food–Folks with a new subpoena. With regard to Food–Folks's argument about GZK's failure to provide a witness fee or a mileage fee, we note the portion of Civ.R. 45(B) stating that "[i]f the witness being subpoenaed resides outside the

{¶ 29} Although we have found that the trial court erred by enforcing a defectively served subpoena, we anticipate that GZK may re-serve the subpoena in compliance with Civ.R. 45(B). Therefore, in the interest of completeness, we will address Food–Folks's remaining substantive arguments concerning the subpoena and the documents at issue. We turn next to Food–Folks's trade-secret argument, which states:

{¶ 30} "The trial court erred by enforcing the subpoena without reviewing the documents containing Food–Folks' trade secrets."

{¶ 31} Food–Folks notes that a trade secret includes any financial information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," provided that the financial information "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D).

{¶ 32} Food–Folks also points out that the Ohio Supreme Court has adopted a six-factor test for determining whether information qualifies as a trade secret. These factors are as follows: "(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information." *State ex rel. Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 524–525, 687 N.E.2d 661, citing *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 134–135, 7 OBR 165, 454 N.E.2d 588.

{¶ 33} Food–Folks argues that the trial court should have given it an opportunity to address the foregoing factors. Food–Folks also contends that the trial court should have reviewed its financial documents in camera and should have considered a protective order prior to requiring disclosure of the documents. In response, GZK asserts that Food–Folks should have taken the initiative to address the six factors *before* the trial court ruled on the matter. Given Food–

---

county in which the court is located, the fees for one day's attendance and mileage shall be tendered without demand." This portion of the rule contemplates the subpoenaed witness being required to travel for an "appearance" at some type of proceeding. A representative of Food–Folks may be able to comply with a subpoena duces tecum, however, without traveling anywhere. See, e.g., Civ.R. 45(C)(2)(a) (stating that a person commanded to produce and permit inspection and copying of documents need not appear in person "unless commanded to attend and give testimony at a deposition, hearing, or trial"). If no appearance or travel is required, then Food–Folks would not be entitled to the fees identified in Civ.R. 45(B).

Folks's failure to do so, GZK contends the trial court did not err in rejecting the trade-secret argument. GZK also notes that Food–Folks did not request a hearing or an in camera review prior to the trial court's ruling. Finally, GZK argues that FFF previously disclosed some of Food–Folks's financial information, thereby waiving any trade-secret argument.

{¶ 34} Upon review, we agree with Food–Folks that the trial court should have given it an opportunity to address the trade-secret factors and should have conducted an in camera review before ordering disclosure of the financial documents. In reaching this conclusion, we recognize that the party asserting trade-secret status has the burden to demonstrate that its information qualifies as a trade secret. *State ex rel. Plain Dealer*, 80 Ohio St.3d at 525, 687 N.E.2d 661. A careful examination of the procedural history in this case, however, reveals that Food–Folks had no reason to address the six factors prior to the trial court's ruling.

{¶ 35} Food–Folks responded to GZK's subpoena by serving GZK with written objections, as authorized by Civ.R. 45(C). One of those objections asserted that the requested documents were confidential trade secrets. Under Civ.R. 45, once an objection is made, "the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued." The rule further provides that the party serving the subpoena "may move at any time for an order to compel the production." Here GZK filed a "response in opposition" to the objections. The Civil Rules do not provide for a "response" to objections, however, because objections are not something on which a trial court rules. Rather, as stated in Civ.R. 45(C), objections are served on the party who issued the subpoena. Therefore, we conclude that the trial court properly construed GZK's "response in opposition" as a motion to compel. Therein, GZK addressed each of Food–Folks's objections. With regard to the trade-secret assertion, GZK *did not dispute* that the requested financial records were trade secrets. It argued only as follows:

{¶ 36} "Due to Food, Folks & Fun's corporate structure and its position as FFF"s operating arm, its financial documents are relevant and likely to lead to the discovery of admissible evidence. *Even assuming the production of this information would constitute trade secrets and is otherwise confidential,* this Court has previously ruled against FFF in this manner and ordered FFF"s documents produced. As such, Food, Folks & Fun, being the same corporate entity, is required to produce the same. FFF and Food, Folks & Fun together constitute the same corporate entity involved in the action giving rise to the claims in this lawsuit. GZK is therefore entitled to financial documents that fully illustrate the entity's financial structure." (Emphasis added.)

{¶ 37} In making the foregoing argument, GZK expressly assumed that the financial documents qualified as trade secrets, but asserted that they nevertheless were discoverable because they were relevant and because FFF had been required to produce similar documents. In light of GZK's assumption that the financial records at issue were trade secrets, Food–Folks had no reason to address the six trade-secret factors, to argue the trade-secret issue in its memorandum in opposition to GZK's motion to compel, or to request an in camera review. Instead, Food–Folks responded to the points raised by GZK and argued that the documents were not relevant, that FFF, unlike Food–Folks, had never raised a trade-secret defense, and that FFF and Food–Folks were distinct corporate entities.

{¶ 38} In its subsequent decision and entry, however, the trial court misread GZK's motion to compel as presenting an argument "that the information that it is requesting is not trade secret and cannot be withheld on that basis." The trial court then found the financial records to be relevant and noted Food–Folks's failure to specify its trade-secret concerns. As a result, the trial court rejected Food–Folks's trade-secret contention out of hand.

{¶ 39} In our view, the trial court abused its discretion by misreading GZK's motion to compel, which assumed that the documents *were* trade secrets, and then summarily rejecting Food–Folks's trade-secret argument. If the trial court were inclined to reject Food–Folks's trade-secret argument, despite GZK's express assumption that the documents *did* qualify as trade secrets, it first should have granted Food–Folks an opportunity to address the issue and should have conducted an in camera review. In light of GZK's presumption in its motion to compel that the financial documents were trade secrets, Food–Folks had no reason to anticipate that the trial court would rule otherwise. Therefore, we conclude that Food–Folks did not forfeit its ability to challenge the trial court's trade-secret ruling or waive its right to seek a hearing on the matter and an in camera review.

{¶ 40} Finally, we reject GZK's claim that FFF previously disclosed some of Food–Folks's financial information, thereby waiving any trade-secret argument. Although they are closely aligned, FFF and Food–Folks are distinct corporate entities. The fact that FFF may have disclosed some documents in the past does not preclude Food–Folks from raising a trade-secret objection. Moreover, we find it unlikely that FFF previously disclosed the same financial information GZK seeks from Food–Folks. If that were the case, GZK would have no need to obtain the information a second time.

{¶ 41} Based on the reasoning set forth above, we sustain Food–Folks's assignments of error, insofar as it contends that the trial court erred in ordering

it to produce financial documents to GZK without first allowing it to address the trade-secret issue and without conducting an in camera review.

{¶ 42} In its remaining two arguments, Food–Folks asserts:

{¶ 43} "The trial court erred by compelling disclosure of documents that are not reasonably calculated to lead to the discovery of admissible evidence to support GZK's lost profits claim."

{¶ 44} "The trial court erred by compelling disclosure of documents that are not reasonably calculated to lead to the discovery of admissible evidence to support GZK's punitive damages claim."

■ {¶ 45} Food–Folks contends that its financial records are irrelevant to the issues in this case and are not reasonably calculated to lead to the discovery of admissible evidence. We disagree. A trial court enjoys broad discretion in the regulation of discovery. *Whitt v. ERB Lumber*, 156 Ohio App.3d 518, 2004-Ohio-1302, 806 N.E.2d 1034, at ¶ 28. We review a trial court's ruling on a discovery matter for an abuse of discretion. Id. Based on our examination of the record and the parties' respective arguments, we do not believe that the trial court abused its discretion in finding the financial records at issue to be relevant and reasonably calculated to lead to the discovery of admissible evidence. Applying this broad standard, we are disinclined to second-guess the trial court's decision authorizing GZK to review a limited number of Food–Folks's documents. In reaching this conclusion, we do not ignore the fact that Food–Folks, while technically not a party to this lawsuit, differs from defendant FFF only in name and has been characterized by a Food–Folks corporate director as the "operating arm" of FFF. Food–Folks's assignments of error are overruled, insofar as it contends that the trial court erred by finding the documents at issue to be relevant and reasonably calculated to lead to the discovery of admissible evidence.

### III. Conclusion

{¶ 46} Based on the reasoning set forth above, we hold that the trial court erred in enforcing a defectively served subpoena. The trial court also erred by not giving appellant Food–Folks an opportunity to address its trade-secret argument and by not conducting an in camera review before ordering disclosure of certain financial documents. Accordingly, we hereby reverse the trial court's judgment entry sustaining GZK's motion to enforce the subpoena.

Judgment reversed.

WOLFF and DONOVAN, JJ., concur.