GIUSTI, Admr., Appellee and Cross–Appellant,

v.

AKRON GENERAL MEDICAL CENTER, Appellants and Cross–Appellee, et al.

[Cite as *Giusti v. Akron Gen. Med. Ctr.,* 178 Ohio App.3d 53, 2008-Ohio-4333.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24023.

Decided Aug. 27, 2008.

54

William T. Whitaker and Andrea L. Whitaker, for appellee and cross-appellant.

Rocco Potenza and Jeffrey Schobert, for appellant and cross-appellee.

Per Curiam.

## INTRODUCTION

{¶ 1} George Giusti has sued Akron General Medical Center and various doctors alleging a negligent failure to diagnose and treat an aortic dissection that he believes caused his son's death. During a discovery deposition, the hospital's lawyer refused to allow an emergency-room physician to answer certain questions based on the peer-review privilege. Giusti also propounded interrogatories and requests for production of documents to the defendants that garnered similar objections based on the peer-review privilege. Giusti moved to compel responses to the outstanding questions and requests. After a hearing, the trial court granted Giusti's motion as to the deposition questions but denied it in regard to the written discovery requests. The hospital has appealed the part of the order granting Giusti's motion, arguing that the deposition questions will elicit responses regarding information Dr. Kurtz provided to a peer-review committee. Giusti argues that the hospital failed to carry its burden to properly invoke the privilege. This court affirms the decision of the trial court because the hospital failed to carry its burden to invoke the peer-review privilege and the order denying the motion to compel responses to written discovery requests was not a final, appealable order.

## BACKGROUND

{¶ 2} Jason Rinehart went to the emergency room at Akron General Medical Center complaining of various symptoms that his father, Giusti, argues are indicative of an aortic dissection, or tear in the wall of the aorta. Dr. Christ Kyriakedes and Dr. Scott Felten were the attending physicians involved in his care. Dr. William Kurtz was a resident physician who was working in the emergency department. He was also involved in Rinehart's care. Rinehart was diagnosed with nausea, vomiting, and back pain. He was discharged from the hospital with medications to control those symptoms. He died the next day. The coroner's report described a tear in Rinehart's aorta.

{¶ 3} Giusti deposed Dr. Kurtz, asking various questions about a conversation Dr. Kurtz had with the chairman of the emergency department shortly after Rinehart's death. The hospital's lawyer objected on the basis of the peer-review privilege and instructed Dr. Kurtz not to answer. Giusti also served interrogatories and requests for production of documents on the hospital, Drs. Kyriakedes and Felten, and their employer, General Emergency Medical Specialists. The defendants objected to various requests for information regarding any investigations that may have been conducted into Rinehart's death and any disciplinary actions that may have been taken in response.

{¶ 4} Giusti moved the trial court to compel responses to the pending deposition questions and the written discovery requests. The defendants opposed the motion. The trial court held a hearing and granted Giusti's motion to compel responses to the deposition questions but denied the motion regarding the written discovery requests. The hospital appealed the part of the order granting the motion to compel, while Giusti has attempted to appeal the part denying the motion. This court affirms the trial court's order because the hospital failed to carry its burden to invoke the peer-review privilege and the part of the order denying the motion to compel was not a final, appealable order.

## FINAL, APPEALABLE ORDER

{¶ 5} The first question this court must address pertains to the proper scope of this appeal. The hospital has appealed only the part of the trial court's December 3, 2007 entry compelling Dr. Kurtz to testify regarding his discussion with Dr. Schelble in spite of the hospital's argument that the entire line of questioning should be protected by the peer-review privilege. It argues that this is the only final, appealable order contained in that journal entry. Giusti has attempted to cross-appeal the part of that same entry that denied his motion to compel responses to interrogatories and requests for production of documents based on the same privilege. He argues that the order compelling Dr. Kurtz to testify was not a final, appealable order. He further argues that, if this court deems the order appealable, then this court ought to review the entire privilege argument because the two rulings based on that same privilege are inextricably intertwined.

{¶ 6} Section 3(B)(2), Article IV of the Ohio Constitution limits this court's jurisdiction to the review of "judgments or final orders of the [trial] courts." A trial court's discovery orders are generally interlocutory and thus not immediately appealable. *Walters v. Enrichment Ctr. of Wishing Well Inc.* (1997), 78 Ohio St.3d 118, 121, 676 N.E.2d 890. There are, however, statutory exceptions for orders requiring disclosure of any allegedly privileged material under R.C.

2505.02(B)(4) and, specifically for claimed peer-review-privileged material, under R.C. 2305.252.

{¶ 7} The peer-review statute provides that "[a]n order * * * to produce for discovery or for use at trial the proceedings or records described in this section is a final order." R.C. 2305.252. The trial court's order required Dr. Kurtz to answer questions regarding a conversation that the hospital claims was part of a peer-review proceeding. As the hospital has made a claim of privilege, that part of the order is final and appealable under R.C. 2305.252.

{¶ 8} The next question is whether Giusti has appealed from a final, appealable order. He has appealed the part of the trial court's order that denied his motion to compel responses to certain interrogatories and requests for production of documents. The order denying the motion to compel does not fall within the exception provided in the peer-review statute, because it did not order a medical provider or entity "to produce" anything. R.C. 2305.252.

{¶ 9} R.C. 2505.02(B)(4) provides that an order granting or denying a provisional remedy is final and appealable if it also "(a) * * * determines the action with respect to the provisional remedy and prevents a judgment * * * in favor of the appealing party with respect to the provisional remedy * * * [and] (b) [t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment." R.C. 2505.02(B)(4). The statute defines "provisional remedy" as "a proceeding ancillary to an action, including * * * a proceeding for * * * discovery of privileged matter." R.C. 2505.02(A)(3).

{¶ 10} The trial court's order denying Giusti's motion to compel responses to written discovery requests meets the definition of a "provisional remedy" set forth in the statute. The order, however, fails to satisfy the second prong of the test because it does not preclude a "meaningful or effective remedy" for Giusti via appeal after final judgment. The trial court's decision denying Giusti access to the requested information can be remedied on appeal following final judgment if this court determines that the privilege did not apply to the written discovery requests. See, e.g., *Williams v. Nationwide Mut. Ins. Co.*, 4th Dist. No. 05CA15, 2005-Ohio-6798, 2005 WL 3497710, at ¶ 9. Unlike an order compelling production of claimed privileged material, compliance with an order denying production will not destroy any privilege that may apply. See R.C. 2505.02(B)(4)(b); see also *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. No. 22387, 2005-Ohio-5103, 2005 WL 2373916, at ¶ 29. Therefore, an interlocutory appeal is unnecessary. The part of the order denying Giusti's motion to compel does not satisfy the test for the provisional remedy exception under R.C. 2505.02(B)(4).

{¶ 11} The part of the trial court's December 3, 2007 order denying Giusti's motion to compel responses to written discovery requests is not a final, appeal-

able order. Therefore, Giusti's cross-appeal pertaining to his written discovery requests is dismissed for lack of jurisdiction.

## STANDARD OF REVIEW

██ {¶ 12} This court generally reviews discovery orders for an abuse of discretion. *Swartzentruber v. Orrville Grace Brethren Church* (2005), 163 Ohio App.3d 96, 99, 836 N.E.2d 619. "However, an appellate court considers an appeal from a trial court's interpretation and application of a statute de novo." *State v. Standen* (2007), 173 Ohio App.3d 324, 328, 878 N.E.2d 657, citing *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596. As this appeal questions the trial court's interpretation and application of R.C. 2305.252, this court must review the decision de novo. See e.g., *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, at ¶ 50 (holding that "the confidentiality of information pursuant to R.C. 2305.252 is one of law" to be reviewed de novo); *Smith v. Manor Care of Canton Inc.*, 5th Dist. Nos. 2005–CA–00100, 2005–CA–00160, 2005–CA–00162, and 2005–CA–00174, 2006-Ohio-1182, 2006 WL 636975, at ¶ 22; *Swartzentruber*, 163 Ohio App.3d at 99, 836 N.E.2d 619 (applying a de novo standard of review to a trial court's order granting plaintiff's motion to compel production of claimed privileged materials based on a misstatement of the law).

## PEER–REVIEW PRIVILEGE

{¶ 13} A peer-review committee, as defined by statute, is a committee within a hospital or other qualifying provider of health care that "[c]onducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers." R.C. 2305.25(E)(1)(a). R.C. 2305.252 provides, "Proceedings and records within the scope of a peer review committee * * * shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or * * * provider * * * arising out of matters that are the subject of evaluation and review by the * * * committee."

██ {¶ 14} The purpose of the statute is to protect the integrity of the peer-review process in order to improve the quality of health care. *Gureasko v. Bethesda Hosp.* (1996), 116 Ohio App.3d 724, 730, 689 N.E.2d 76, citing *Gates v. Brewer* (1981), 2 Ohio App.3d 347, 349, 2 OBR 392, 442 N.E.2d 72 (upholding the constitutionality of R.C. 2305.251, the former version of the peer-review statute). The peer-review privilege is not a generalized cloak of secrecy over the entire peer-review process. "If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee." *Huntsman v. Aultman*

*Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, at ¶ 47, citing *Wilson v. Barnesville Hosp.*, 151 Ohio App.3d 55, 2002-Ohio-5186, 783 N.E.2d 554, at ¶ 23.

{¶ 15} The statute protects several classes of people from testifying in civil lawsuits, including those who attend meetings or serve as members of a peer-review committee, those who work for or on behalf of the committee, and those who provide information to the committee. These persons are not permitted to testify regarding "any evidence or other matters produced or presented during the proceedings of the * * * committee" or "any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof." R.C. 2305.252. These individuals, however, "shall not be prevented from testifying as to matters within the individual's knowledge." Id. Information within the knowledge of a witness does not become privileged merely because it was disclosed to a committee member or discussed at a peer-review committee meeting.

{¶ 16} R.C. 2305.252 provides, "Information * * * otherwise available from original sources [is] not to be construed as being unavailable for discovery or for use in any civil action merely because [it was] produced or presented during proceedings of a peer review committee * * *." Id. The statute makes it clear that such information is "available only from the original sources and cannot be obtained from the peer review committee's proceedings or records." Id. Witnesses who "provide[ ] information to a peer review committee * * * cannot be asked about the individual's testimony before the peer review committee, information the individual provided to the peer review committee, or any opinion the individual formed as a result of the peer review committee's activities." Id.

{¶ 17} "Privileges, being in derogation of common law, are to be strictly construed." *Svoboda v. Clear Channel Communications, Inc.*, 156 Ohio App.3d 307, 2004-Ohio-894, 805 N.E.2d 559, at ¶ 19, citing *Weis v. Weis* (1947), 147 Ohio St. 416, 428, 34 O.O. 350, 72 N.E.2d 245. The party claiming the privilege has the burden of proving that the privilege applies to the requested information. Id., citing *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 178, 2 O.O.3d 373, 358 N.E.2d 521. See also *Mulkerin v. Cho*, 9th Dist. No. 07CA007– M, 2007-Ohio-6550, 2007 WL 4292756, at ¶ 6, citing *GZK v. Schumaker Ltd. Partnership*, 168 Ohio App.3d 106, 2006-Ohio-3744, 858 N.E.2d 867, at ¶ 34. The plain language of the statute shields information from discovery and use at trial in "civil action[s] * * * arising out of matters that are the subject of evaluation and review by the * * * committee." R.C. 2305.252. A party claiming the peer-review privilege, at "a bare minimum," must show that a peer-review committee existed and that it actually investigated the incident. *Smith v. Manor Care of*

*Canton Inc.,* 5th Dist. Nos. 2005–CA–00100, 2005–CA–00160, 2005–CA–00162, and 2005–CA–00174, 2006-Ohio-1182, 2006 WL 636975, at ¶ 61.

{¶ 18} If the hospital were to establish that a qualifying peer-review committee investigated the particular incident, the next question for the trial court would not be whether the privilege applies to some general category of communications among peers. The question would be whether the privilege actually does apply to each question the hospital's lawyer instructed his witness not to answer at deposition. "[I]nformation that may be of a type that usually makes up a peer review committee file is not protected by R.C. 2305.252 just because it usually makes up a peer review committee file." *Huntsman v. Aultman Hosp.,* 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, at ¶ 59. Likewise, "not every inquiry made by a peer constitutes a peer review." *Smith,* 2006-Ohio-1182, 2006 WL 636975, at ¶ 62. Therefore, a general objection that a line of deposition questions relates to a discussion among peers of the type usually had in preparation for a peer-review proceeding is not alone sufficient to gain the protection of the peer-review privilege.

{¶ 19} In order to invoke the peer-review privilege to protect a deponent who qualifies for protection under R.C. 2305.252 from answering certain questions, a party must establish that the information sought falls into one of the categories of testimony protected by the statute. Under the statute, a qualifying deponent cannot be asked to reveal (1) his testimony before the peer-review committee, (2) information that he provided to the committee, or (3) opinions that he formed as a result of the committee's activities. See R.C. 2305.252; see also *Manley v. Heather Hill, Inc.,* 175 Ohio App.3d 155, 2007-Ohio-6944, 885 N.E.2d 971, at ¶ 22, citing *Rinaldi v. City View Nursing & Rehab. Ctr., Inc.,* 8th Dist. No. 85867, 2005-Ohio-6360, 2005 WL 3215146, at ¶ 20 (proponent of privilege must establish that requested documents were prepared by or for the use of a peer-review committee).

## DEPOSITION QUESTIONS

{¶ 20} The trial court ruled that Dr. Kurtz must testify "to matters within his knowledge as described in [the peer-review statute]." This court affirms the decision of the trial court, albeit on a slightly different basis, because the trial court's ruling implies that it believed that the hospital had carried its burden of showing that the privilege applied to the conversation between the two doctors. See *Schaaf v. Schaaf,* 9th Dist. No. 05CA0060–M, 2006-Ohio-2983, 2006 WL 1627259, at ¶ 19, citing *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306.

{¶ 21} Dr. Kurtz testified that a couple of days after he treated Rinehart, he received a call from someone in the emergency department asking him to come "speak with [Dr. Schelble] about the situation." Dr. Schelble was the chairman of the emergency-medicine department at the time of these events. Dr. Kurtz testified that he did go in to meet with Dr. Schelble. Giusti's lawyer asked questions about that conversation:

[Mr. Giusti's lawyer]: Tell me about your conversation with [Dr. Schelble].

[Hospital's lawyer]: Objection. I'm not going to let him answer.

[Mr. Giusti's lawyer]: Why is that?

[Hospital's lawyer]: It's my understanding you can establish with him that it's his belief [Dr. Schelble] was doing a review based on a death that occurred within so many hours of a presentation which is as I would understand it peer review.

[Mr. Giusti's lawyer]: * * * Why is it that [Dr. Schelble] called you in?
* * *

[Dr. Kurtz]: He just wanted to go over what had happened.

[Mr. Giusti's lawyer]: Was it just you and him alone?

[Dr. Kurtz]: Correct.

[Mr. Giusti's lawyer]: * * * And did he say anything beforehand about that he was conducting some kind of review for the hospital or conducting some kind of investigation or did he just say I want to talk to you about what happened?

[Hospital's lawyer]: Objection. You can ask him what his understanding was. I'm not going to let him start talking about what [Dr. Schelble] talked to him about.

[Mr. Giusti's lawyer]: Let me put it to you this way, were you made aware in any way that this was some kind of standard hospital review?
* * *

[Hospital's lawyer]: Objection.
* * *

[Court reporter repeated the question.]

[Hospital's lawyer]: I'll object, but you can answer that.

[Dr. Kurtz]: My understanding is he just wanted to review what had happened.

[Mr. Giusti's lawyer]: With you?

[Dr. Kurtz]: Quality assurance type thing is my understanding.

{¶ 22} Following this discussion, Giusti's lawyer went on to ask the following questions regarding the content of the conversation between Dr. Kurtz and Dr.

Schelble: "[T]ell me exactly as you recollect the questions that [Dr. Schelble] asked you when he called you in to talk about this a couple of days after the incident. \* \* \* Tell me anything else you can remember about that conversation with [Dr. Schelble] a couple of days after I guess it would have been March 9, 2005." Following the advice of his lawyers, Dr. Kurtz refused to answer.

{¶ 23} In response to Giusti's motion to compel, the hospital filed a brief and the affidavit of Richard Streck, M.D., senior vice president of the medical staff at the hospital. In his affidavit, Dr. Streck claimed that Dr. Schelble, who had died in November 2005, was responsible "as chairman of the Emergency Medicine Department" for "performing quality assurance reviews of patient care." Dr. Streck stated that "[a]s part of the quality assurance process, Dr. Schelble would conduct interviews with individual care providers who were involved in a patient's care that was the subject of review."

{¶ 24} The hospital has consistently argued that the conversation between Drs. Schelble and Kurtz was protected by R.C. 2305.252. The hospital, however, has failed to carry its burden of proof on that issue. The evidence revealed that the hospital had a process for "performing quality assurance reviews of patient care" and that Dr. Schelble was part of that process. The evidence did not prove, however, that a peer-review committee ever initiated or performed any type of review of Rinehart's death. Nor did it prove that the conversation between Drs. Schelble and Kurtz was part of a peer-review committee proceeding.

{¶ 25} The only evidence that the hospital can argue supports its claim that the conversation was privileged came from Dr. Kurtz. After repeatedly answering that Dr. Schelble just wanted to talk about what happened and after his lawyer's repeated objections regarding the peer-review privilege, Dr. Kurtz finally said, "Quality assurance type thing is my understanding." Dr. Kurtz did not testify that his conversation with Dr. Schelble was conducted as part of a peer-review committee proceeding.

{¶ 26} Dr. Kurtz's vague speculation about Dr. Schelble's purpose for the meeting is not evidence supporting the application of the peer-review privilege. Although the hospital now argues that Dr. Kurtz "was specifically advised that the conversation was 'quality assurance,'" the deposition transcript reveals that Dr. Kurtz had only an "understanding" that the purpose of the meeting was a "[q]uality assurance type thing." Furthermore, regardless of Dr. Kurtz's impression of the purpose for the meeting, he did not testify that the conversation was part of a peer-review committee proceeding. Unfortunately, Dr. Schelble has since died. Thus, the hospital was unable to present his testimony regarding

whether his conversation with Dr. Kurtz was conducted as part of a peer-review proceeding.

{¶ 27} The hospital failed to carry its initial burden to properly invoke the privilege because there is no evidence that a peer-review committee conducted any investigation into Rinehart's death. Additionally, the statement by Dr. Kurtz was insufficient to carry the hospital's burden of showing that his conversation with Dr. Schelble was part of a peer-review committee proceeding. This court affirms the decision of the trial court ruling that Dr. Kurtz must answer the deposition questions posed by Giusti. The hospital's assignment of error is overruled.

## CONCLUSION

{¶ 28} The hospital failed to carry its initial burden to invoke the peer-review privilege under R.C. 2305.252. Additionally, the hospital has not provided evidence that the conversation between Drs. Schelble and Kurtz was conducted as part of a peer-review proceeding. Therefore, the trial court's ruling regarding the deposition of Dr. Kurtz is affirmed.

{¶ 29} The trial court's order denying Giusti's motion to compel written discovery responses was not a final, appealable order. Therefore, Giusti's cross-appeal is dismissed.

Judgment affirmed.

WHITMORE and DICKINSON, JJ., concur.

SLABY, J., dissents.

SLABY, Presiding Judge, dissenting.

{¶ 30} I respectfully dissent from the majority's resolution of the hospital's assignment of error. I believe that there was sufficient information in Dr. Streck's affidavit to establish that the communication between Drs. Kurtz and Schelble was part and parcel of the peer-review process. I would reverse the trial court's order compelling Dr. Kurtz to answer any questions about his conversation with Dr. Schelble.