[Cite as *Stull v. Summa Health Sys.*, 2022-Ohio-457.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

KALVYN STULL, AN INCOMPETENT
PERSON, BY AND THROUGH HIS
GUARDIAN OF THE ESTATE, BRIAN
ZIMMERMAN, et al.

    Appellees

    v.

SUMMA HEALTH SYSTEM, et al.

    Appellants

C.A. No.    29969

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2019 06 2259

DECISION AND JOURNAL ENTRY

Dated: February 16, 2022

HENSAL, Presiding Judge.

{¶1} Summa Health System, Summa Health System Corp., Summa Health System Community, Summa Health, Summa Physicians, Inc., dba Summa Health Medical Group, Jeffrey R. Welko, M.D., Nathan R. Blecker, M.D., Mazen E. Elashi, M.D., and Lynda J. Shambaugh, RN (collectively "Summa") appeal an order of the Summit County Court of Common Pleas that granted Kalvyn Stull's motion to compel in part. For the following reasons, this Court affirms.

I.

{¶2} Mr. Stull received treatment from Summa after being injured in an automobile crash. According to Mr. Stull, the treatment made the injuries he suffered to his brain more severe. He, therefore, sued Summa for medical negligence. As part of Mr. Stull's discovery requests, he sought the resident file of Dr. Elashi, who was a resident physician at Summa.

Summa refused to provide the file because it alleged the file was protected by the peer review privilege under Revised Code Section 2305.252. After Mr. Stull moved to compel the production of the resident file and other materials, the trial court granted the motion as to the resident file because it concluded that Summa did not meet its burden of establishing that the file is protected by the privilege. Summa has appealed, assigning as error that the court incorrectly compelled the production of Dr. Elashi's entire residency file.

## II.

{¶3} As a preliminary matter, Mr. Stull has moved to dismiss the appeal, arguing that the trial court's order is not a final, appealable order. Section 2305.252(A), however, provides that "[a]n order by a court to produce for discovery * * * the proceedings or records described in this section is a final order." Although the trial court determined that the resident file was not a record protected by Section 2305.252, the question is whether the information at issue is alleged to be protected by the statute. *Cousino v. Mercy St. Vincent Med. Ctr.*, 6th Dist. Lucas No. L-17-1218, 2018-Ohio-1550, ¶ 12. In *Giusti v. Akron General Medical Center*, 178 Ohio App.3d 53, 2008-Ohio-4333 (9th Dist.), this Court explained that an order is final and appealable under Section 2305.252 if a party has made a claim of privilege under the section. *Id*. at ¶ 7. Under Mr. Stull's interpretation, appeals would be limited to situations in which a trial court determined that an item is a proceeding or record of a peer review committee of a health care entity under Section 2305.252 but ordered the information to be produced, nevertheless. Mr. Stull's motion to dismiss is denied.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY COMPELLING THE PRODUCTION OF THE ENTIRE RESIDENCY FILE FOR MAZEN ELASHI, M.D. BECAUSE IT IS A PEER REVIEW RECORD THAT IS PRIVILEGED AND EXEMPT FROM DISCOVERY UNDER OHIO REVISED CODE SECTION 2305.252.

{¶4} Summa argues that the trial court incorrectly compelled it to produce Dr. Elashi's resident file because the file is privileged under Section 2305.252 and, therefore, exempt from discovery. Section 2305.252(A) provides in relevant part that "records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery * * * in any civil action against a health care entity * * * arising out of matters that are the subject of evaluation and review by the peer review committee." This Court reviews the trial court's interpretation and application of Section 2305.252 de novo. *Giusti* at ¶ 12.

{¶5} "Privileges, being in derogation of common law, are to be strictly construed." *Id.* at ¶ 17, quoting *Svoboda v. Clear Channel Communications, Inc.*, 156 Ohio App.3d 307, 2004-Ohio-894, ¶ 19 (6th Dist.). "The party claiming the privilege has the burden of proving that the privilege applies to the requested information." *Id.* To establish that a privilege exists under Section 2305.252(A), "[f]irst, the health care entity must establish the existence of a 'peer review committee' as defined by R.C. 2305.25(E)." *Cousino*, 2018-Ohio-1550 at ¶ 16, quoting *Bansal v. Mt. Carmel Health Sys., Inc.*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 15. A "'[p]eer review committee' means a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that * * * either" "[c]onducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care" or "[c]onducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions." R.C. 2305.25(E)(1).

{¶6} "Second, the health care entity must prove that each of the documents that it refuses to produce is a 'record within the scope of [that] peer review committee' as required by

R.C. 2305.252." *Cousino* at ¶ 16, quoting *Bansal* at ¶ 15. "This burden may be satisfied by '(1) submitting the documents in question to the trial court for an in camera inspection, or (2) presenting affidavit or deposition testimony containing the information necessary for the trial court to adjudge whether the privilege attaches.'" *Meade v. Mercy Health-Regional Med. Ctr., LLC*, 9th Dist. Lorain No. 18CA011307, 2019-Ohio-438, ¶ 11, quoting *Bansal* at ¶ 14. "The health care entity must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer review committee's records." *Bansal* at ¶ 15.

{¶7} Summa argues that it presented undisputed affidavits that show that Dr. Elashi's residency file is a record kept and maintained by a peer review committee exclusively for the purpose of evaluating the competence, professional conduct, and quality of care provided by Dr. Elashi. Regarding whether a peer review committee existed, Summa points to the affidavit of Dr. Erica Laippley, who averred that Summa has established a Graduate Medical Education Committee ("GMEC") that is responsible for overseeing the quality assessment of resident physicians and reviewing all medical care provided by resident physicians at Summa facilities. She averred that Summa has also established a Clinical Competency Committee ("CCC") for each residency program that is under the umbrella of the GMEC. The responsibility of each CCC is to periodically gather and analyze all data about the performance of individual residents and to make recommendations to the GMEC about the competency and quality of care of the resident.

{¶8} Regarding whether Dr. Elashi's resident file was a record within the scope of the peer review committee, Summa argues that the residency files maintained by the GMEC constitute such a record. It argues that any record created by or exclusively for a peer review

committee is privileged. It also argues that any records generated by another source but kept by the peer review committee may only be obtained from the other source and not through the committee. Summa points to the affidavit of Dr. Laippley as establishing that Dr. Elashi's residency file is a record of a peer review committee that was created and used by the GMEC and the CCCs.

{¶9} The trial court determined that Summa failed to meet its burden of establishing that Dr. Elashi's resident file is privileged. It noted that Dr. Laippley's affidavit contained mostly generalities about the type of information contained in residency files. It noted that she did not identify any specific individuals who authored any of the documents in the file or identify any specific individuals as being part of a peer review committee. The court also determined that the only specific information about what was in the residency file was information that would not be protected by the peer review privilege because it was produced by physicians who were not identified as having any involvement with a peer review committee.

{¶10} Summa argues that the trial court's conclusions incorrectly interpret and apply Section 2305.252. It argues that it did not have to identify every document in the file to prove that the entire file is a record of a peer review committee. According to Summa, because resident files are created and used exclusively for peer review and quality assurance purposes, all the documents within a resident file are records of a peer review committee, regardless of who authored them or their contents. It also argues that, because Mr. Stull was seeking Dr. Elashi's entire file and not specific documents within it, it only had to establish the more general premise that resident files are records of a peer review committee and did not have to establish the privileged nature of any of the specific documents within them. Summa argues that the affidavits it submitted establish that Dr. Elashi's entire resident file is a record of a peer review

committee and contains records that were compiled and used by a peer review committee to conduct quality assurance activities. It, therefore, argues that the trial court's decision was incorrect.

{¶11} In opposition to Mr. Stull's motion to compel the production of Dr. Elashi's resident file, Summa submitted an affidavit by Dr. Laippley. According to the affidavit, Dr. Laippley is the Interim Program Director of the General Surgery Residency Program. Dr. Laippley averred that her duties include overseeing the residency program, reviewing the residents' performance, and overseeing the quality of care and performance improvement of residents. She also averred that Summa conducts professional credentialing activities, resident evaluations, resident performance reviews, and related activities.

{¶12} Regarding residents, Dr. Laippley explained that they are physicians who have obtained limited licenses to practice medicine in accredited residency programs. Because their training is incomplete, they do not qualify for the same credentialing and privilege process as other physicians. Instead, the quality of their care is overseen by the GMEC through its medical education department. Each separate residency program has a resident director and faculty members who participate in a peer review process of the medical care rendered by the residents. Dr. Laippley also explained that CCCs are another group of committees responsible for the quality review of residents and that they report to the GMEC. Their responsibility is to periodically gather and analyze all data about the performance of residents and any quality reviews of their performance as well as make recommendations to the GMEC about the competence, professional conduct, and quality of care provided by residents.

{¶13} Dr. Laippley further averred that a residency file is maintained in both a paper form and in an electronic database. It contains records of qualitative assessments by faculty

members of medical care rendered by a resident, their competence, professional conduct, and their quality of care. Some of the data refers more generally to their overall skill and quality of care while some relates to specific patients. The residency files are maintained by administrative staff called residency coordinators and access to the files is limited to individuals who participate in the residency review and peer review processes.

{¶14} The affidavit of Dr. Laippley establishes the existence of a resident peer review committee. Upon close review, however, the affidavit does not establish that Dr. Elashi's residency file is a "record[ ] within the scope of" such a committee. R.C. 2305.252(A). Instead, the affidavit provides that residency files are maintained by residency coordinators. Residency coordinators are described only as "administrative staff[,]" and it is not explained whether they are part of the administrative staff of the GMEC, a CCC, or some other aspect of the hospital. There are no statements that the residency files are produced, managed, kept, maintained, or created by the GMEC or a CCC or any other similar language. It is also not indicated whether any reviews or associated documents produced by the GMEC or a CCC are kept within a resident's file.

{¶15} Dr. Laippley's affidavit also explains that residency files may be accessed by anyone who participates "in the residency review and peer review processes." It is unclear whether "residency review" refers to something different than the "peer review" being provided by the GMEC and CCCs, but it is implied by the language of the affidavit. Notably, the word review appears after both residency and peer, suggesting they are different review processes. The word "process[ ]" is also pluralized, indicating that "residency review" is a separate process from "peer review[.]"

{¶16} As previously noted, privileges must be strictly construed. *Giusti*, 178 Ohio App.3d 53, 2008-Ohio-4333, at ¶ 17. Upon review of the record, we conclude that the trial court correctly concluded that Summa failed meet its burden of establishing that the peer review privilege applies to Dr. Elashi's resident file because it did not establish that the file is a record "within the scope of a peer review committee" under Section 2305.252(A). Summa's assignment of error is overruled.

### III.

{¶17} Summa's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

STEPHEN W. FUNK and MEGAN M. MILLICH, Attorneys at Law, for Appellants.

LAMAR F. JOST and BRIAN S. OSTERMAN, Attorneys at Law, for Appellants.

LEE E. PLAKAS, MEGAN J. FRANTZ OLDHAM, COLLIN S. WISE, and LAUREN A. GRIBBLE, Attorneys at Law, for Appellees.

BRIAN ZIMMERMAN, Attorney at Law, for Appellees.